

# THE ATTORNEY GENERAL
## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

November 14, 1972

Hon. Tom Hanna
Criminal District Attorney
P. O. Box 2553
1149 Pearl Street
Beaumont, Texas  77701

Dear Mr. Hanna:

Opinion No. M-1261

Re: Questions relating to
construction of Art-
icle 6252-17, Vernon's
Civil Statutes (the
"open meetings law")

Your recent letter requesting the opinion of this
office concerning the referenced matter poses the following
questions:

"1. May the Commissioners' Court, without
violating Article 6252-17, meet in private to
discuss legal matters with their attorney?

"2. May the Commissioners' Court meet and
have conferences with staff members of the govern-
mental bodies for the purpose of internal admin-
istration where no matters of public business or
agency policies that affect public business, will
be acted upon?

"3. Is there a limitation on subjects covered
with the attorney or staff members as long as there
is no action taken?

"4. Assuming that questions one and two are
answered in the affirmative, then would notice of
such meetings have to be posted?"

Section 2(c) of Article 6252-17 (the "open meetings
law"), as originally enacted in 1967 (Acts 60th Leg., R.S.
1967, ch. 271, p. 597), provided that

"Nothing in this Act shall be construed to prevent a governing body from consulting with its attorney."

When, however, Article 6252-17 was amended in 1969 by Senate Bill No. 260 (Acts 61st Leg., R.S. 1969, ch. 227, p. 674), Section 2(c), as written in 1967, was deleted in its entirety.

Thereafter, the Senate passed Senate Concurrent Resolution No. 83 (Acts 61st Leg., R.S. 1969, p. 3082), which provided as follows:

"WHEREAS, Senate Bill 260 has passed the House and the Senate; and

"WHEREAS, Senate Bill 260 was amended to delete provisions in the present open meetings law stated that 'Nothing in this Act shall be construed to prevent a governing body from consulting with its attorney'; and

"WHEREAS, The privileged nature of communications between attorney and client are recognized by the common law, by Article 38.10, Code of Criminal Procedure of Texas, 1965, and by the rules of the State Bar of Texas; and

"WHEREAS, It was the intent of the legislature, in repealing the quoted portion of Section 2, Chapter 271, Acts of the 60th Legislature, Regular Session, 1967 (Article 6252-17, Vernon's Texas Civil Statutes), the open meetings law, to eliminate from that law surplus matter already covered elsewhere in the law; now, therefore, be it

"RESOLVED by the Senate of the State of Texas, the House of Representatives concurring, That the legislature declare that it did not intend, in passing Senate Bill No. 260, to abridge or in any

way affect the privileged nature of communications between attorney and client." (emphasis added.)

Article 38.10, Texas Code of Criminal Procedure, referred to in the preceding Concurrent Resolution, provides as follows:

"All other persons . . ., whatever may be the relationship between the defendant and witness, are competent to testify, except that an attorney at law shall not disclose a communication made to him by his client during the existence of that relationship, nor disclose any other fact which came to the knowledge of such attorney by reason of such relationship." (emphasis added.)

See, also, Canon 34 of Article XIII of the Rules of the State Bar of Texas.

It is also well established that confidential communications between an attorney and his client are privileged in civil cases, though there is no statute expressly so providing. 61 Tex.Jur.2d 669-70, Witnesses, Sec. 106 (and authorities therein cited); Williams v. Williams, 108 S.W.2d 297 (Tex.Civ. App. 1937, no writ); Cochran v. Cochran, 333 S.W.2d 635 (Tex.Civ.App. 1960, error ref. n.r.e.).

It is apposite to note that the 62nd Legislature, convening in regular session in 1971, and presumably aware of Senate Concurrent Resolution No. 83, did not see fit to restore, by legislative act, the deleted language of Section 2(c) to Article 6252-17.

Although Senate Concurrent Resolution No. 83, quoted supra, is a form of expression by which the Legislature stated its opinion or will in respect to allowing a governing body to consult in private with its attorney, and although the Constitution of Texas (Article IV, Section 15) recognizes the right of the Legislature to express itself by resolutions, it is also manifestly clear that a statute cannot be amended, repealed,

or otherwise modified by a resolution. <u>Humble Oil  & Ref. Co.</u>
<u>v. State</u>, 104 S.W.2d 174 (Tex.Civ.App. 1936, no writ); <u>Terrell</u>
<u>Wells Swimming Pool v. Rodriquez</u>, 182 S.W.2d 824 (Tex.Civ.App.
1944, error ref.); <u>Mosheim v. Rollins</u>, 79 S.W.2d 672 (Tex.Civ.
App. 1935, error dism. w.o.j.); Attorney General's Opinions
Nos. WW-345 (1958) and M-1234 (1972).

Thus, Senate Concurrent Resolution No. 83 could have
no amendatory legal effect whereby the deleted original word-
ing of Section 2(c) of Article 6252-17 could be reinstated.
This is not to say, however, that the deletion of Section
2(c), in and of itself, has the effect of denying the attorney-
client privilege to governing bodies.  This question is one
of first impression in this State, and we must turn to deci-
sions from other jurisdictions in an effort to find precedent
whereby we can correctly answer your first question.

In <u>Laman v. McCord</u>, 432 S.W.2d 753 (Ark.Sup. 1968),
a city council meeting in closed session with the city attor-
ney to discuss a proceeding to which the city was a party was
found violative of the Arkansas open meetings statute which
provided that "(e)xcept as otherwise <u>specifically</u> provided by
law (emphasis added.)", all meetings of public entities were
to be public meetings.  In so holding, the Court stated that

> "The attorney-client privilege, originally a
> common-law immunity, now rests upon a section of
> the Civil Code, adopted in 1869, which provides
> that an attorney is incompetent to testify about
> his client's communications without the client's
> consent. . . . For us to say that the section just
> cited, <u>dealing only with a testimonial disqualifi-</u>
> <u>cation</u>, 'specifically' provides that the city coun-
> cil may consult its attorney in secret would simply
> amount to striking the word 'specifically' from
> the Freedom of Information Act." 432 S.W.2d at
> 756. (emphasis added.)

In Times Publishing Co. v. Williams, 222 So.2d 470
(Fla.App. 1969), having held that the provisions of the Florida
open meetings law were applicable to every assemblage of a
board or commission governed by the law at which any discus-
sion, deliberation, decision, or formal action was to be had,
made, or taken relating to, or within the scope of, the offi-
cial duties or affairs of such body, the court answered the
query of whether there were any exceptions to the mandate of
the law by finding that there was a narrow attorney-client
exception where public consultation by a public body with its
attorney regarding pending or impending litigation would force
him to violate the canons of ethics as promulgated by the state
supreme court. In Williams, the court declared that

> ". . . The clear import of the 'All meetings'
> provisions of this statute is that the public,
> acting through the legislature, has waived the
> (attorney-client) privilege with regard to the
> enumerated public bodies.
>
> "There is one aspect of the attorney-client
> relationship, however, in which there are obliga-
> tions which bind the attorney; and the aspect
> involves his duties in the conduct of pending or
> impending litigation. . . .
>
> "The legislature therefore, is without any
> authority to directly or indirectly interfere
> with or impair an attorney in the exercise of his
> ethical duties as an attorney and officer of the
> court. . . . This is not to say, of course, that
> it may not condemn unethical or criminal conduct,
> but the attorney has the right and duty to prac-
> tice his profession in the manner required by the
> Canons unfettered by clearly conflicting legisla-
> tion which renders the performance of his ethical
> duties impossible. He cannot be put in the unten-
> able position of choice between a violation of a
> statute or a violation of a specific Canon insofar
> as they clearly conflict (emphasis by the court).

We can perceive of the possibility of instances
when there may be conflict between the two <u>as</u>
<u>they may relate to privacy and confidentiality</u>
<u>in the handling of pending or anticipated liti-</u>
<u>gation</u>." (emphasis added.)

"* * *

". . . We hold also, however, that . . . the
act does not permit private consultation between
its agency and the attorney in any other circum-
stances except those narrowly outlined above."
222 So.2d at 475-76.

In the case of <u>Sacramento Newspaper Guild v. Sacra-</u>
<u>mento Co. Bd. of Super.</u>, 69 Cal.Rptr. 480 (Cal.App. 1968),
however, it was held that, notwithstanding the language of
the California open meetings law that "(a)ll meetings of the
legislative body of a local agency shall be open and public,"
the statutory opportunity of boards of supervisors to confer
privately with their attorneys on occasions properly requiring
confidentiality was not abolished. The <u>Sacramento</u> court stated
that

"The Brown Act (the open meetings law), spec-
ifically section 54953, broadly encompasses 'all
meetings.' Viewed as a statutory microcosm, its
demand is forthright, offering no internal inter-
stice for private lawyer-client consultations. It
is not a microcosm, however, but one element in a
structure of constitutional and statutory policies
covering the powers, duties and procedures of local
agencies of government. Another part of this legal
structure is the privilege attaching to confiden-
tial lawyer-client communications.

"* * *

> "Plaintiffs do not dispute the availability of the lawyer-client privilege to public officials and their attorneys. They view it as a barrier to testimonial compulsion, not a procedural rule for the conduct of public affairs. The view is too narrow . . . The privilege serves a policy assuring private consultation. If client and counsel must confer in public view and hearing, both privilege and policy are stripped of value. . . .

> "Thus the structure of laws governing local public boards includes two separate substructures, one in the Government Code demanding open meetings, the other in the Evidence Code assuring confidential lawyer-client conferences. Each expresses a separate policy objective, but neither refers expressly to the other in terms of dominance or reconciliation. . . ." 69 Cal.Rptr. at 488-89. (emphasis added.)

The Sacramento court continued as follows:

> "The two enactments (Government Code and Evidence Code) are capable of concurrent operation if the lawyer-client privilege is not over-blown beyond its true dimensions. As a barrier to testimonial disclosure, the privilege tends to suppress relevant facts, hence is strictly construed. . . As a barrier against public access to public affairs, it has precisely the same suppressing effect, hence here too must be strictly construed. As noted earlier, the assurance of private legal consultation is restricted to communications 'in confidence.' Private clients, relatively free of regulation, may set relatively wide limits on confidentiality. Public board members, sworn to uphold the law, may not arbitrarily or unnecessarily inflate confidentiality for the purpose of deflating the spread of the

<u>public meeting law. Neither the attorney's
presence nor the happenstance of some kind of
lawsuit may serve as the pretext for secret
consultations whose revelations will not injure
the public interest</u>. To attempt a generaliza-
tion embracing the occasions for genuine confi-
dentiality would be rash. The Evidence Code
lawyer-client provisions may operate concurrently
with the Brown Act, neither superseding the other
by implication.

> "Because the Brown Act did not abolish the
> statutory opportunity of boards of supervisors
> to confer privately with their attorney on occa-
> sions properly requiring confidentiality, the
> preliminary injunction is too broad. . . ."
> 69 Cal.Rptr. at 492. (emphasis added.)

A recent Opinion of the Attorney General of the State
of Washington held as follows concerning the applicability of
the attorney-client privilege to that State's open meetings
law:

> ". . . (W)e would conclude that there remains
> a modified attorney-client privilege for the gov-
> erning body of a public agency in this state.
> This privilege cannot be asserted by the body for
> all legal advice which it receives, particularly
> that which fits within the concept of deliberations
> of the body. However, those sensitive areas of
> legal advice, particularly with reference to pend-
> ing or contemplated litigation, settlement offers
> and similar matters, can, in our opinion, be dis-
> cussed between the governing body and its attorney
> in a closed session." Wash. Att'y. Gen. Op. No.
> 33 (1971).

See, generally, 38 A.L.R.3d 1070, et seq., "Validity, Construction, and Application of Statutes Making Public Proceedings Open to the Public" (1971), and Note, "Administrative Law---Freedom of Information---Texas Open Meetings Act Has Potentially Broad Coverage but Suffers from Inadequate Enforcement Provisions", 49 Texas L. Rev. 764 (1971).

In view of the foregoing, we are of the opinion that, although Article 6252-17 no longer contains an express exception regarding closed meetings for attorney-client conferences, the Article must be read in consonance, and construed harmoniously, with Senate Concurrent Resolution No. 83, Article 38.10, Texas Code of Criminal Procedure, the Canons and Rules of the State Bar of Texas, and the long tradition of the common law regarding the confidentiality of the attorney-client relationship. While it is true that Article 38.10 is but a testimonial bar to disclosure of attorney-client confidences, we believe its underlying purpose and policy would be vitiated by holding it totally inapplicable to meetings of public bodies. We do not believe the Legislature, in enacting Article 6252-17, as amended, intended that public bodies, in certain sensitive legal areas, were any less entitled to privileged communications with their counsel than are private litigants.

We also stress, however, that the absence of an express exception for the attorney-client privilege in Article 6252-17 has had the effect of modifying the common law and the degree to which a public body may claim the attorney-client privilege. On the other hand, we find that the legislative intent of the statute would allow discussions or conferences of certain confidential preliminary legal matters incidental to the development of a public ultimate legal issue to be decided at the "open meeting," since such conferences would not rise to the dignity of the type "meeting" intended to be open to the public. In our view, a public body governed by Article 6252-17 may only validly claim the attorney-client privilege and hold a closed session to discuss legal matters with its attorney when it desires legal advice with regard to pending or contemplated litigation, settlement offers, and

similar matters where an attorney's duty to his client, pursuant to the Rules and Canons of the State Bar of Texas, would clearly conflict with that Article.  It is also our opinion that mere conferences which discuss such matters that only form the basis for further consideration at an "open meeting" as contemplated by Article 6252-17 do not contravene the provisions of that statute.  However, a public body may not invoke the attorney-client privilege when it only seeks legal advice in regards to matters of administrative procedure or public deliberation without the purview of the examples set out above.

Therefore, your first question, as qualified in the preceding paragraph, is answered in the affirmative.

Your second question is also answered in the affirmative, inasmuch as Section 2(d) of Article 6252-17 provides that:

> "The provisions of this Act shall not apply to periodic conferences held among staff members of the governmental body.  Such staff meetings will be only for the purpose of internal administration and no matters of public business or agency policies that affect public business will be acted upon."

Leaving out the provisions of Section 2(d), the meeting of staff members of a governmental body is not required to be open to the public.  Therefore, to render Section 2(d) meaningful and to give effect to its intent and purpose, we construe it to mean that as an exception to the requirement that every meeting of the governmental body be open to the public, such requirement was inapplicable when the members of the body met with or among staff members for the limited purpose of internal administration and in which matters of public business or board policies affecting public business were not to be discussed and acted upon.

As for that portion of your third question dealing with whether there is a limitation on subjects covered with a public body's attorneys, you are advised that, in open meetings of a public body, said body may confer publicly with its attorney on any legal point germane to its administrative procedure or to matters included on the agenda of its meeting. In closed sessions with its attorney, you are advised that a public body may discuss with its attorney only those matters set forth as within the attorney-client privilege in our answer to your question one, supra; those matters are, to wit, legal matters pertaining to pending or contemplated litigation, settlement offers, or similar matters wherein the duty of a public body's counsel to his client, pursuant to the Rules and Canons of the State Bar of Texas, clearly conflicts with Article 6252-17.

In closed conferences with its staff members, pursuant to Section 2(d) of Article 6252-17, you are advised that the only subject matter limitation is that the matters discussed pertain solely to internal administration, and that they in no way concern public business or agency policies that affect public business. Meetings held with staff members, subject to Section 2(d) of Article 6252-17, are clearly not governed by that Article. See Attorney General's Opinion No. M-220 (1968), which held that

> "A meeting or session is one in which the members of a governmental body transact official business which such agency is charged to perform."

Hence, a conference held pursuant to Section 2(d) is not such a "meeting or session" that Article 6252-17 requires be open to the public.

Your fourth question inquires whether a public body is required to post a notice in advance of any closed meeting with its attorney or its staff members. Subsection (a) of Section 3A of Article 6252-17 provides that

"Written notice of the date, place, and sub-
ject of each meeting held by a governmental body
shall be given before the meeting as prescribed
by this section."

Pursuant to the reasoning of Attorney General's
Opinion No. M-220 (1968), quoted supra, you are advised that
a public body must post notice of an open or closed meeting
with its attorney, when matters of either official business,
public business, or agency policies affecting public business
will be discussed with him.  If no such matters are to be
discussed with a public body's attorney, no notice of a
meeting with him need be posted.

You are further advised that no notice of a public
body's closed meeting with staff members, pursuant to Sec-
tion 2(d) of Article 6252-17; need be posted, inasmuch as that
Section specifically prohibits the discussion of public business
in such meetings.

## S U M M A R Y

(1) Despite the fact that Article 6252-17,
Vernon's Civil Statutes (the "open meetings law"),
grants no such specific exemption, a public body
is entitled to hold closed meetings with its
attorney when such body seeks the attorney's
advice in regards to pending or contemplated
litigation, settlement offers, and similar matters
where the duty of a public body's counsel to his
client, pursuant to the Rules and Canons of the
State Bar of Texas, clearly conflicts with that
Article.

(2) The privilege of confidential communica-
tions between attorney and client, as codified in
Article 38.10, Texas Code of Criminal Procedure,
and enunciated in the common law and the Rules and
Canons of the State Bar of Texas, is applicable to

public bodies governed by Article 6252-17, to the extent set forth in paragraph (1), supra. A public body may not invoke the privilege in regards to any other matters of public deliberation or parliamentary procedure.

(3) A resolution passed by the Legislature cannot amend, repeal, or otherwise modify an Act earlier passed by it, though the intent expressed in such resolution may validly be considered when endeavoring to harmonize one legislative act with another.

(4) Pursuant to Section 2(d) of Article 6252-17, a public body may have conferences with its staff members for the purpose of internal administration where no matters of official or public business, or agency policies that affect public business, will be acted upon.

(5) In open meetings, a public body may confer publicly with its attorney on any legal point germane to its administrative procedure or to matters included on its agenda. In closed meetings with its attorney, a public body may discuss only those items enumerated in paragraph (1), supra.

(6) In closed conferences with its staff members, a public body may discuss only matters of internal administration, and may not discuss matters of official or public business, or agency policies that affect public business.

(7) A public body must post notice, pursuant to Subsection (a) of Section 3A of Article 6252-17, of an open or closed meeting with its attorney, if matters of official or public business, or agency policies affecting public business, are to be discussed with him.

(8) No notice of a public body's meeting with its staff members, for internal administration purposes pursuant to Section 2(d) of Article 6252-17, need be posted.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Austin C. Bray, Jr.
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

Bill Flanary
Jim Swearingen
Lynn Taylor
Roland Carlson

SAMUEL D. MCDANIEL