ORFINGER, Judge.
The Department of Environmental Regulation (D.E.R.) appeals from a nonfinal order of the circuit court, which among other things, appears to deny the Department the right to use money from the Water Quality Assurance Trust Fund[1] for the purpose of conducting a pollution assessment on the respondents’ property. Concluding that the order appealed from is a non-final, non-appealable order, we elected to treat the appeal as a petition for writ of certiorari, and ordered a response. Having now considered the response, and petitioner’s reply thereto, we grant the writ.
D.E.R. filed suit in 1983 against respondents, Monteo Research Products, Inc., a chemical manufacturing company, and Maurice Miville, president of Monteo and owner of the alleged contaminated property in question, and Mikyo Miville, also a co-owner of the property in question. The amended complaint filed by petitioner seeks injunctive relief to require respondents to identify the nature and extent of contamination on the Monteo property and repair the damage caused by approximately 1,000 drums allegedly containing residue of chemical substances including toxic wastes which were disposed of by respondents in a drum pit on Miville’s property which adjoins the Monteo site. Petitioner also seeks reimbursement for its costs, including costs of clean up if it choses to do so, as well as for damages caused to the environment and civil penalties for violations of laws and departmental rules.
The present proceeding arises from a motion filed by D.E.R. requesting an order authorizing access to and limited use of respondents’ property to perform a contamination assessment, alleging that respondents had failed and refused to remove the hazardous substances from the site. The motion notes that Florida Statute section 376.307, which creates the Water Quality Assurance Trust Fund, authorizes the state to clean up and restore sites whenever the person in charge fails to do so. The petitioner stated in the motion that money has been set aside in the Fund to hire a contractor to perform the contamination assessment on the instant property. The motion seeks relief based on petitioner’s concern about the potential threat to the environment and public health because of the continuing contamination caused by the release of hazardous substances into the ground water. The contamination assessment includes placement of and sampling from monitoring wells as well as ground and surface water and analysis of the results, all necessary before clean up can commence. Petitioner also sought entry for the purpose of removing contaminants or rendering non-hazardous any hazardous substances found.
After hearing extensive testimony on the motion and reviewing memoranda of law *773 submitted by the parties, the trial judge entered the order in question in which he “found” that applying the 1983 statute [sections 376.30-376.315, Florida Statutes (1985)] to conditions on the land which existed prior to the effective date of the statute would be an unconstitutional taking without compensation, or an inverse condemnation. Nevertheless, the order authorized D.E.R. to enter upon respondents’ lands “for the purpose of conducting an appropriate pollution assessment, utilizing, where possible, the existing pollution monitoring systems and installing such additional pollution monitoring and assessment systems as appropriate, at [D.E.R.’s] expense.” However, the order also specifically did not authorize Petitioner to use Trust fund monies to conduct the assessment.
Interestingly, no issue was raised below on either of these “findings,” as to an unconstitutional taking or inverse condemnation. Respondents never raised them, no testimony was heard on anything other than the need for a pollution assessment, and the subject matter of these findings was not argued in any memorandum of law submitted by either party.[2] Neither did the respondents raise, as a defense to the motion, any issue as to the legal authority of D.E.R. to use trust fund monies for performing the pollution assessment. Although other issues were initially raised by petitioner, in this certiorari proceeding it argues only that the trial court departed from the essential requirements of law when it refused authorization for the expenditure of trust funds for the performance of the pollution assessment.
The trial court lacks jurisdiction to determine matters which are not the subject of appropriate pleadings and notice. See e.g. Bartolucci v. McKay, 428 So.2d 378 (Fla. 5th DCA 1983); Florida Power and Light Company v. Canal Authority of the State of Florida, 423 So.2d 421 (Fla. 5th DCA 1982). Therefore, a determination by the trial court on an issue which is neither raised by the pleadings or on which the parties have been given notice or an opportunity to be heard, is violative of due process and is a departure from the essential requirements of law. Respondents dismiss petitioner’s arguments by saying that the “findings” of the court regarding the constitutionality and inequity of the act are mere obiter dicta, not essential to the decision on the motion and a gratuitous opinion which binds no one. This position appears to be correct. However, the ruling of the trial court that petitioner is not authorized to utilize Water Quality Assurance Trust Fund monies for the contamination assessment cannot be dismissed as dicta, because it goes to the very essence of the motion to authorize the pollution assessment. The court, in ruling on a matter which was not pled or argued, has deprived petitioner of the opportunity to be heard on the propriety of using the trust fund for the purposes in question, and has placed petitioner in a position of using such monies at its peril. Clearly, if petitioner is not permitted to use available funds for the pollution assessment, and it is legally entitled to use the funds for that purpose, it may not be able to perform the assessment at all, so a remedy by appeal after final judgment is inadequate, particularly in view of the remedial purpose of the statute in question.
In the adoption of section 376.30, et seq., the Legislature has expressly declared, in pertinent part:
(2) The Legislature further finds and declares that:
(a) The storage of pollutants within the jurisdiction of the state and state inland waters is a hazardous undertaking;
(b) Spills, discharges, and escapes of pollutants that occur as a result of procedures taken by private and governmental entities involving the storage of such products pose threats of great danger and damage to the environment of the state, to citizens of the state, and to *774 other interests deriving livelihood from the the state;
(c) Such hazards have occurred in the past, are occurring now, and present future threats of potentially catastrophic proportions, all of which are expressly declared to be inimical to the paramount interests of the state as set forth in this section; and
(d) Such state interests outweigh any economic burdens imposed by the Legislature upon those engaged in storing pollutants and related activities.
When the express purpose of a statute is the protection of the public health, safety and welfare, irreparable harm is presumed. Harvey v. Wittenberg, 384 So.2d 940 (Fla. 3d DCA 1980); Times Publishing Company v. Williams, 222 So.2d 470 (Fla. 2d DCA 1969). The legislature has authorized D.E.R. to use the trust funds for making the pollution assessment, in adopting section 376.307 and stating therein that “The fund may be used to carry out the provisions of this act and for the cleanup and restoration of any site contaminated with [the defined deleterious substances] [Emphasis added].” § 376.307(2), Fla.Stat. (1985). The act also authorizes D.E.R. to establish a requirement that any facility covered by the act be subject to complete and thorough inspection, and to monitor a facility which has discharged pollutants to ensure that such discharge does not continue to occur. § 376.303(l)(c), Fla.Stat. (1985). An assessment of the extent of the pollution and of the requirements to clean up the site appears clearly necessary to the performance of the department’s duties, as does the expenditure of money from the trust fund, which was established for that very purpose. The goal of the act is to protect the public from contaminants immediately, without the necessity of delay because of economic or legal complications.
Petitioner contends, correctly, that no adequate remedy exists and the harm is irreparable because petitioner will not expend funds from a source the court has expressly stated it is not authorized to use with the hope that the court will later change its mind. As the trial court has specifically found that the assessment is necessary, and because the assessment is within the purpose for which the Water Quality Assurance Trust Fund was established, the refusal of the trial court to authorize use of these funds, particularly when the issue was not raised or argued, is a departure from the essential requirements of law for which no other relief is available.
The petition for certiorari is granted, and that portion of the trial court’s order of June 12,1985 which denies to petitioner the use of money from the Water Quality Assurance Fund for the purpose of conducting the pollution assessment, is quashed.
WRIT GRANTED; ORDER QUASHED IN PART.
COBB, C.J., and SHARP, J., concur.

. § 376.307, Fla.Stat. (1985).

. The respondents did not raise any constitutional or inverse condemnation issue in their answer to the amended complaint.