The Honorable Tom Gallagher Office of the Treasurer Department of Insurance The Capitol Tallahassee, Florida 32399-0300
Dear Mr. Gallagher:
You ask the following question:
Is the Florida Windstorm Underwriting Association subject to the Government in the Sunshine Law and the Public Records Law?
In sum:
The Florida Windstorm Underwriting Association is subject to the Government in the Sunshine Law and the Public Records Law.
You state that the Florida Windstorm Underwriting Association (FWUA) is a private nonprofit unincorporated association made up of all insurers licensed to transact property insurance on a direct basis in the State of Florida. The FWUA provides windstorm coverage to all applicants who are in good faith entitled to, but are unable to procure, windstorm damage insurance through ordinary methods.[1] According to your letter, the authority for the creation of the FWUA arises from section 627.351(2)(b), Florida Statutes, which provides:
The department [of Insurance] shall require all insurers licensed to transact property insurance on a direct basis in this state to provide windstorm coverage to applicants from areas determined to be eligible pursuant to [section 627.351(2)(c)] who in good faith are entitled to, but are unable to procure, such coverage through ordinary means; or it shall adopt a reasonable plan or plans for the equitable apportionment or sharing among such insurers of windstorm coverage. The commissioner shall promulgate rules which provide a formula for the recovery and repayment of any deferred assessment.
Subparagraphs 1.-7. of section 627.351(2)(b), Florida Statutes, set forth certain provisions or required elements of the plan. Section 627.351(2)(b)6., Florida Statutes, specifically provides that the plan "may authorize the formation of a private nonprofit corporation, a private nonprofit unincorporated association, or a nonprofit mutual company. . . ." You state that the FWUA is the private nonprofit unincorporated association created by the plan pursuant to this section. The plan operates through a board under the supervision of the department pursuant to section XV-1 of the plan of operation which provides:
Powers and Duties of the Board — The Plan of Operation shall be administered by the Board, subject to the supervision of the Commissioner.
The Department of Insurance is responsible for adopting a plan for the equitable apportionment or sharing of windstorm coverage.
In fulfilling this responsibility, the Department of Insurance (department) has adopted Rule 4-49.001, Florida Administrative Code, which adopts and incorporates by reference the Florida Windstorm Underwriting Association Amended and Restated Plan of Operation and Restated Articles of Agreement, as revised March 1990 (plan).
The plan recognizes that the FWUA was established in accordance with a Florida Statute enacted by the 1970 Regular Session of the Florida Legislature to "provide a method whereby adequate windstorm insurance may be provided in lawfully designated areas of Florida."[2] The board of directors of the FWUA which is responsible for administering the plan is subject to the supervision of the Insurance Commissioner.
GOVERNMENT IN THE SUNSHINE LAW
Section 286.011, Florida Statutes, the Government in the Sunshine Law, provides in pertinent part:
All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision . . . at which official acts are to be taken are declared to be public meetings open to the public at all times. . . .
It is the entire decision-making process to which the Sunshine Law applies and not merely to the formal assemblage of a public body at which the final vote is taken. Thus, the statute extends to the discussions and deliberations as well as to the formal action taken by a public body.[3]
In determining which entities may be covered by the Sunshine Law, the courts have stated that it was the Legislature's intent to extend application of the law so as to bind "every `board or commission' of the state, or of any county or political subdivision over which it has dominion and control."[4] The courts, in interpreting the Sunshine Law, have concluded that the law should be liberally construed so as to give effect to its public purpose.[5]
While private organizations generally are not subject to the Sunshine Law, section 286.011, Florida Statutes, has been held applicable to such organizations in order to avoid a circumvention of the statute. In determining whether a private organization is subject to the Sunshine Law, this office has generally considered all the factors relating to the responsibilities of the private entity and the public agency.
For example, in Attorney General Opinion 92-80, this office stated that the board of directors of a nonprofit corporation created by the Legislature, Enterprise Florida, Inc., was subject to the Sunshine Law. Membership on the board of directors of the corporation was statutorily prescribed as was the manner of appointment and consisted of both private and public entities. The duties of the corporation were also prescribed by statute.
Based upon a review of relationship between the public agency and the private entity, this office in Attorney General Opinion 83-95 concluded that where a county has accepted the technical services of a nongovernmental advisory committee appointed by a private nonprofit corporation in the recodification and amendment of the county zoning laws, the meetings of such a committee were subject to the Sunshine Law. While the Legislature has "no right to require meetings of civic organizations, unconnected with . . . government, to conform to the government in the sunshine law,"[6] the committee appointed to study the zoning code was not, in this office's opinion, unconnected with government but rather had been impliedly delegated the authority to act on behalf of the county commission in the examination and revision of the zoning code.[7]
In the instant inquiry, the plan, by its own description, recognizes that the FWUA was established in accordance with a Florida statute to develop a method for providing adequate windstorm insurance as mandated by state law. The plan itself was adopted by the Department of Insurance as a rule to fulfill the legislative mandate in section 627.351, Florida Statutes. The board of directors of the FWUA, while responsible for administering the plan of operation association, is subject to the control of the Commissioner of Insurance. Thus, the FWUA is created pursuant to a plan adopted by departmental rule, which carries out a governmental function through a board supervised by the department.
In light of the above, I am of the opinion the FWUA and its board of directors are subject to the control of the "dominion and control" of the Commissioner of Insurance and are, accordingly, subject to the Government in the Sunshine Law.
PUBLIC RECORDS LAW
Chapter 119, Florida Statutes, Florida's Public Records Law, requires that records made or received in connection with the transaction of official business by an agency, as defined therein, must be open for inspection in the absence of a statute exempting the record or making it confidential.[8] "Agency" is defined to mean
any state, county, district, authority, or municipal officer, department, division, board, bureau, commission, or other separate unit of government created or established by law . . . and any other public or private agency, person, partnership, corporation, or business entity acting on behalf of any public agency.[9]
To determine whether a private entity is "acting on behalf of" a public agency, the courts have adopted a test involving analysis of a totality of factors. In making such a determination, the courts will consider:
1) Creation — did the public agency play any part in the creation of the private entity? 2) Funding — has the public agency provided substantial funds, capital or credit to the private entity or is it merely providing funds in consideration for goods or services rendered by the private entity? 3) Regulation — does the public agency regulate or otherwise control the private entity's professional judgment? 4) Decision-making process — does the private entity play an integral part in the public agency's decisionmaking process? 5) Goals — is the goal of the private entity to help the public agency and the citizens served by the agency?[10]
While there is no single factor which would subject an entity to the requirements of the Public Records Law, the factors viewed together might well require a private entity to comply with chapter 119, Florida Statutes.
For example, in Attorney General Opinion 92-37, this office concluded that the Tampa Bay Performing Arts Center, Inc., a private nonprofit corporation created for the purpose of providing cultural and educational enhancement to the general public which was authorized by the City of Tampa to operate the city's performing arts facility, was subject to the Public Records Law. More recently, this office concluded that chapter 119, Florida Statutes, applied to the board of directors of the community health purchasing alliances (CHPA).[11] The CHPA boards of directors were established by law to provide supervision of the CHPAs which were part of a legislatively created effort to improve health care.
A review of the association and its relationship with the department leads me to conclude that the association is an agency for purposes of chapter 119, Florida Statutes. As discussed supra, the FWUA is a creature of a plan adopted by rule of the department. It is responsible for carrying out a governmental function, the implementation of the plan which the department is legislative mandate to adopt. The FWUA's board of directors which administers the plan is subject to the supervision of the Commissioner of Insurance.
In light of the above, I am of the opinion that the association is an "agency" as defined in chapter 119, Florida Statutes, and is, accordingly, subject to the provisions of the Public Records Law.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjwls
[1] See, s. 627.351(2)(a), Fla. Stat. (1993), authorizes agreements among property insurers with respect to the equitable apportionment among them which may be afforded applicants who are in good faith entitled to, but are unable to procure, windstorm damage insurance through ordinary methods. Such insurers may agree among themselves on the use of reasonable rate modifications for such insurance.
[2] Part I of plan.
[3] See, Board of Public Instruction of Broward County v. Doran,224 So.2d 693 (Fla. 1969), in which the Court recognized the right of the public to be present during all phases of enactments by public boards or commissions; Times Publishing Company v. Williams, 222 So.2d 470, 473 (Fla. 2d DCA 1969), stating:
[I]t is the entire decision-making process that the legislature intended to affect by the enactment of the statute before us. . . . Every step in the decisionmaking process, including the decision itself, is a necessary preliminary to formal action. It follows that each such step constitutes an "official act," an indispensable requisite to "formal action," within the meaning of the act.
[4] See, e.g., Times Publishing Company v. Williams,222 So.2d 470, 473 (Fla. 2d DCA 1969); City of Miami Beach v. Berns,245 So.2d 38 (Fla. 1971).
[5] See, Board of Public Instruction of Broward County v. Doran, supra; Wood v. Marston, 442 So.2d 934 (Fla. 1983) (statute should be broadly construed to give effect to its remedial and protective purposes).
[6] Op. Att'y Gen. Fla. 83-95 (1983), quoting, Town of Palm Beach v. Gradison, supra at 476.
[7] And see, Op. Att'y Gen. Fla. 77-43 (1977), stating that a committee appointed by a county bar association at the request of and delegated authority by a county school board to screen applicants for the position of school board attorney and to make recommendations to the school board for its consideration in the appointment of a school board attorney was subject to section286.011, Florida Statutes.
[8] See, s. 119.011(1), Fla. Stat. (1993).
[9] See, s. 119.011(2), Fla. Stat. (1993).
[10] See, News and Sun-Sentinel Company v. Schwab, Twitty Hanser Architectural Group, Inc., 596 So.2d 1029 (Fla. 1992).
[11] Memorandum from Pat Gleason to Attorney General Butterworth, dated October 26, 1993.