Dear Ms. Mackenzie-Smith:
At the request of a majority of the members of the Board of County Commissioners of St. Lucie County you have asked for my opinion on substantially the following question:
Whether meetings of the Solar and Energy Loan Fund of St. Lucie County, Inc., are subject to the open meetings requirement of section 286.011, Florida Statutes, Florida's Government in the Sunshine Law.
In sum:
Meetings of the Solar and Energy Loan Fund of St. Lucie County, Inc., are subject to section 286.011, Florida Statutes, the Government in the Sunshine Law.
According to your letter, in July 2010, the Solar and Energy Loan Fund of St. Lucie County, Inc., (hereinafter "the fund" or "SELF") filed for incorporation as a Florida nonprofit corporation with the Department of State Division of Corporations. The by-laws of the corporation reflect the purposes for which the corporation was organized:
"Within the general purposes for which the corporation is organized, the primary purpose shall be to foster the development of a green economy through education and facilitating the implementation of public programs and related activities promoting and implementing conservation of energy usage and generating and/or utilizing alternative energy production facilities with the goal of assisting in the conservation and protection of the Florida environment within St. Lucie County, Florida, and the surrounding area, through the use, development, deployment, creation and facilitation of energy conservation technologies, alternative energy production and/or distribution technologies, additional energy production and conservation related technologies yet to be developed, and related economic and community development and revitalization strategies historically utilized by local governments and community based organizations to foster and promote conservation of energy, economic revitalization and community development through investment in and assistance to community based institutions. The corporation is intended to organize and qualify as a Community Development Financial Institution (`CDFI') as authorized and contemplated by the Reigle Community Development and Regulatory Improvement Act of 1994, as amended, and through its operations, to lessen the burdens of government undertaken by St. Lucie County, Florida."[1]
The solar and energy loan fund, in excess of $20 million, was created from private capital and an energy block grant from the U.S. Department of Energy which was applied for and awarded to St. Lucie County. In addition, the county has authorized the issuance of special assessment improvement funding and reimbursement agreements for this energy financing program.
Information obtained by this office indicates that the solar and energy loan fund specifically targets energy conservation, energy efficiency, and rooftop solar for residential and non-residential property owners. The fund makes loans for terms of 10 to 20 years at low interest rates designed to keep the monthly loan payments lower than the energy savings and cost diversion derived from the "green" enhancements funded through the program. Property owners participate in this no money down loan program by agreeing to voluntary property assessments through newly created sustainability taxing districts. The property assessment collection methodology enables property owners to pay these loans over an extended period as a part of the tax bill for the particular piece of property and the loan payments are returned to the non-profit organization to replenish the fund. A small administration charge will also apply.
As indicated above, a two million plus dollar energy block grant from the U.S. Department of Energy was applied for and awarded to St. Lucie County and the county "assign[ed] its responsibilities under the Grant to SELF[.]"[2] The agreement specifies that "SELF desires to accept assignment of the County's responsibilities under the grant subject to any County oversight[.]"[3] The agreement designates the project as "an appropriate use of Grant funds and further benefits the health, safety and welfare of the citizens of St. Lucie County, Florida.[4]
In a resolution passed by the Board of County Commissioners of St. Lucie County, [5] the county relies on section 163.08, Florida Statutes, for authority to undertake the Energy Financing Program.[6] The county's resolution provides that a program administrator may be engaged for purposes of administering the Energy Financing Program and designates the Solar and Energy Loan Fund of St. Lucie County, Inc., as the program administrator.
The county resolution also authorizes the county to validate not more than $50 million in special assessment improvement funding and reimbursement agreements to fund the energy financing program. The funding and reimbursement agreements would be entered into between the county and a lending entity such as the Solar and Energy Loan Fund of St. Lucie County. These funding agreements would provide for:
"1. the establishment of one or more revolving lines of credit with which to pay the costs associated with energy conservation and efficiency improvements and renewable energy improvements,
2. the repayment of amounts drawn on the lines from the proceeds of voluntary special assessments imposed against the real property benefitted by such improvements, and
3. reimbursement to the County for amounts advanced in furtherance of the energy financing program."[7]
At some time in the future the fund will apply to the Internal Revenue Service for designation as a 501(c)(3) organization. The eight member board of directors of the fund has one member who is a sitting St. Lucie County Commissioner and that member is chosen by the board of county commissioners. The other seven members of the board of the fund are members of the business and educational communities. You state that no public or governmental entity will have any ownership interest in or right to control the fund or have any majority interest on its board.
You ask whether meetings of the Solar and Energy Loan Fund of St. Lucie County, Inc., are subject to the open meetings requirement of section 286.011, Florida Statutes, Florida's Government in the Sunshine Law.
The Government in the Sunshine Law, section 286.011, Florida Statutes, requires that meetings of a public board or commission at which official acts are to be taken are to be open to the public. The test for whether the meetings of particular boards, councils, commissions, or similar entities are subject to section 286.011, Florida Statutes, has been judicially determined to be whether the board or council or other entity is subject to the dominion and control of the Legislature.[8] The statute has been held to extend to the discussions and deliberations of, as well as formal action taken by, a public board or commission.[9] In interpreting the Government in the Sunshine Law, the courts have stated that it was the intent of the Legislature to bind "every `board or commission' of the state, or of any county or political subdivision over which it has dominion and control."[10]
A private organization that performs services for a public agency and receives compensation for these services is not, by virtue of that relationship alone, subject to section 286.011, Florida Statutes. Rather, the courts have generally considered whether there has been a delegation of the public agency's governmental or legislative functions or whether the private organization plays an integral part in the public agency's decision-making process.[11]
Recent decisions by Florida courts to determine whether the open government laws apply to a private entity focus on whether the private entity is merely providing services to the public agency or whether it has substituted itself for the public agency in the performance of these services. For example, the court inStanfield v. Salvation Army, [12] held a private corporation subject to Chapter 119, Florida Statutes, and noted that a private corporation taking over the county's role as the provider of probation services "was not the provision of architectural services as in Schwab, but the complete assumption of a governmental obligation. Rather than providing services to the county, the Salvation Army provided services in place of the county."[13]
(emphasis in original)
The Fifth District Court of Appeal in News-JournalCorporation v. Memorial Hospital-West Volusia, Inc., [14]
reviewed the relationship between a hospital authority and the not-for-profit company leasing the public hospital's facilities. The court recognized a distinction between a contract in which the private entity provides services to a public body and a contract in which the private entity provides services in place of the public entity:
"If one merely undertakes to provide material — such as police cars, fire trucks, or computers — or agrees to provide services — such as legal services, accounting services, or other professional services — for the public body to use in performing its obligations, then there is little likelihood that such contractor's business operation or business records will come under the open meetings or public records requirements. On the other hand, if one contracts to relieve a public body from the operation of a public obligation — such as operating a jail or providing fire protection — and uses the same facilities or equipment acquired by public funds previously used by the public body then the privatization of such venture to the extent that it can avoid public scrutiny would appear to be extremely difficult, regardless of the legal skills lawyers applied to the task."[15] (emphasis in original)
The district court reversed the lower court's holding that the not-for-profit company was outside the scope of the Public Records Law and the Government in the Sunshine Law and the Florida Supreme Court approved this decision.[16]
More recently, in an Informal Attorney General Opinion, this office considered the application of Florida's open government laws to Florida's Great Northwest, Inc., a private not-for-profit corporation existing to "facilitate economic and workforce development within the sixteen county region of northwest Florida."[17] Membership in the organization was open to any person or organization with an interest in the economic development of the state and was made up primarily of private development organizations, post-secondary education institutions, and workforce development boards. The corporation was managed by a board of directors made up of public and private sector members. The informal opinion concluded that the corporation was not subject to the public records and sunshine laws since no delegation of a public agency's governmental function was apparent and the corporation did not appear to play an integral part in the decision-making process of a public agency. Further, while acknowledging that economic development is a governmental function, the opinion recognized that it is not exclusively governmental and the corporation, in that instance, was not acting on behalf of a particular public agency in accomplishing this function. Finally, the funding of the corporation was by membership pledges primarily received from private entities and federal grant moneys, rather than state or local funds.
In the instant inquiry, the Solar and Energy Loan Fund of St. Lucie County, Inc., appears to be a private nongovernmental organization created to foster the development of a green economy in St. Lucie County. However, the situation you have described is not one in which a private not-for-profit entity presents independently developed, unsolicited plans or proposals for green economic development to the county. Rather, it appears that St. Lucie County has delegated its governmental powers to the fund. By utilizing the Solar and Energy Loan Fund of St. Lucie County, Inc., for the accomplishment of the county-adopted energy financing program, the board of county commissioners has effectively delegated accomplishment of the goals set forth in the plan to the corporation.
Thus, while the statute would not ordinarily apply to private organizations, section 286.011, Florida Statutes, does apply when there has been a delegation of a board's authority to conduct public business such as carrying out the terms of the county's green economic development plan. In addition, substantial financial ties link the county and the fund. The county applied for an energy block grant from the U.S. Department of Energy and administration of this grant, when it was awarded to St. Lucie County, was reassigned to and accepted by the fund. The county has also used its governmental powers to authorize the issuance of special assessment improvement funding and reimbursement agreements for this energy financing program. While the receipt of public funds is not a determinative factor in whether or not a private entity is subject to the open government laws, the apparent substitution of the fund for the county in this undertaking leads me to the conclusion that the fund stands in the shoes of the county for this program and is subject to the open meetings law to the same extent as the county.
In sum, it is my opinion that meetings of the Solar and Energy Loan Fund of St. Lucie County, Inc., are subject to section 286.011, Florida Statutes, the Government in the Sunshine Law.
Sincerely,
Bill McCollum Attorney General
BM/tgh
[1] See Art. II, s. 1.(b), By-Laws of Solar and Energy Loan Fund of St. Lucie County, Inc.
[2] See Whereas clause, p. 1, Agreement Between Solar and Energy Loan Fund of St. Lucie County, Inc. and St. Lucie County (EECBG).
[3] Id.
[4] Supra at n. 2.
[5] Resolution No. 10-259 approved October 5, 2010.
[6] See s. 1.03(S), Resolution No. 10-259.
[7] See Inter-office Memorandum, St. Lucie County, Florida, prepared by McIntyre, C.A. No. 10-1240, dated September 27, 2010.
[8] City of Miami Beach v. Berns, 245 So. 2d 38 (Fla. 1971);Times Publishing Company v. Williams,222 So. 2d 470 (Fla. 2d DCA 1969).
[9] Times Publishing Company, supra.
[10] Id.
[11] And see IDS Properties, Inc. v. Town of Palm Beach,279 So. 2d 353 (Fla. 4th DCA 1973), wherein the court held that there was no government by delegation exception to the Government in the Sunshine Law by undertaking to delegate the conduct of public business through the use of an alter ego.
[12] 695 So. 2d 501 (Fla. 5th DCA 1997).
[13] Id. at 503.
[14] 695 So. 2d 418 (Fla. 5th DCA 1997).
[15] Id. at 420.
[16] See Memorial Hospital-West Volusia, Inc. v. News-JournalCorp., 729 So. 2d 373 (Fla. 1999).
[17] See Inf. Op. to Gaetz and Coley, dated December 17, 2009.