Mr. Stuart L. Litvin, President Hollywood Economic Growth Corporation 330 North Federal Highway Hollywood, Florida 33020
Dear Mr. Litvin:
As President of the Hollywood Economic Growth Corporation, you have asked for my opinion on the following question:
Are meetings of the Hollywood Economic Growth Corporation subject to the requirements of the Government in the Sunshine Law when the corporation is assisting the City of Hollywood in implementing the federal HUD 108 loan program?
In sum:
The Hollywood Economic Growth Corporation is not subject to the requirements of the Government in the Sunshine Law when it counsels and advises private business concerns on their participation in the HUD 108 loan program made available through the City of Hollywood.[1]
The Hollywood Economic Growth Corporation (HEGC) was created as a not-for-profit organization in 1994. The corporation "is separate, independent and autonomous from the City of Hollywood, Florida, and is not intended to exist or to be construed as an agency or arm of the City of Hollywood, Florida."[2] The purpose of HEGC is "[t]o promote economic development and investment within the City of Hollywood, Florida."[3] The corporation is empowered "[t]o coordinate business development activities, including the creation of new business in Hollywood, Florida, and the attraction of new business thereto, the development and expansion of minority businesses, the encouragement of existing businesses to remain and expand within Hollywood, Florida."[4]
The corporation exists "[t]o plan, foster, encourage, support and promote economic development and growth in the City of Hollywood, Florida, in an effort to expand the local tax base, increase local employment, and improve the general welfare, prosperity and quality of life of the residents of the City of Hollywood, Florida."[5] HEGC may solicit, receive or generate funds from persons, entities or any unit or agency of government and is charged with collecting and disseminating economic data and research in cooperation with local, state and federal governments to promote economic development in Hollywood.[6] The corporation is also authorized by its bylaws "[t]o undertake, alone or in cooperation with other interested organizations or persons, programs, activities or appearances designated to encourage and assist the creation, location or expansion of compatible industries in Hollywood, Florida[.]"[7]
Members of HEGC include the City of Hollywood, the Greater Hollywood Chamber of Commerce, the Chairman of the Hollywood Strategic Planning Committee, and individuals and business entities from the private sector who satisfy the criteria for membership established by the board of directors and are invited to become members.[8] The direction and management of the corporation's affairs is vested in a board of directors made up of private sector directors elected by the voting membership, public sector directors,[9] an ex officio director and the chamber director.[10]
According to your letter, the City of Hollywood has chosen to become involved in the federal HUD 108 loan program. Section 108 of the Housing and Community Development Act of 1974 is a loan guarantee provision of the Community Development Block Grant Program. This program provides communities such as Hollywood with a source of financing for economic development, housing rehabilitation, public facilities and large-scale physical development projects. Eligible applicants include metropolitan cities and urban counties.
Information you have provided indicates that neither the City of Hollywood nor the Hollywood Economic Growth Corporation will actively "market" the HUD 108 program. Rather, the corporation makes companies aware of the availability of many incentive or financial programs for which businesses in the area may be eligible, such as the Ad Valorem Tax Incentive, Local Alternative Economic Development Incentive, Qualified Targeted Industry Incentive, HUD 108 program, Urban Job Tax program, Broward County Cash Grant program, Small Business Association Loan program and Industrial Revenue Bond financing. These are just some of the federal, state and local business incentive programs available in your area for which local businesses may apply and for which HEGC provides counseling and assistance.
In this regard, HEGC will provide services to applicants for the HUD 108 program as it does for other incentive or financial programs. For example, a business applicant may request that HEGC review its finances and business plan prior to submission of this material to the city for participation in one of these programs. The Hollywood Economic Growth Corporation will advise the applicant of weaknesses or omissions in its documentation and options for proceeding. This advice is not binding on the applicant, who may proceed without contacting the HEGC, and the city has no access to the advice given to individual applicants. The City of Hollywood will have its own loan review committee to make decisions for the city on accepting businesses for the HUD program and will be the sole source for determining acceptance of a particular applicant to the program.
Under the HUD 108 program, HEGC will not process applications, will not take a position on the acceptance of applications, and will not administer or monitor the progress of projects. HEGC will not control the deposit or disbursal of funds and will not monitor their repayment or collect repayments. HEGC will play no part in the City of Hollywood's decision-making process as to who eventually qualifies for and receives the benefits of the program.
Your question is whether the Hollywood Economic Growth Corporation is subject to the requirements of the Government in the Sunshine Law when it is performing its role relating to the Section 108 program.
The Government in the Sunshine Law, section 286.011, Florida Statutes, requires that meetings of a public board or commission at which official acts are to be taken are to be open to the public. The test for whether the meetings of particular boards, councils, commissions, or similar entities are subject to section286.011, Florida Statutes, has been judicially determined to be whether the board or council or other entity is subject to the dominion and control of the Legislature.[11] The statute has been held to extend to the discussions and deliberations of, as well as formal action taken by, a public board or commission.[12] In interpreting the Government in the Sunshine Law, the courts have stated that it was the intent of the Legislature to bind "every `board or commission' of the state, or of any agency or political subdivision over which it has dominion and control."[13]
Additionally, for section 286.011, Florida Statutes, to apply to a particular meeting, two or more members of a body or other entity or group to which the Sunshine Law applies must be present or there must have been delegation of decision-making by such a body to either a single member thereof or to an advisory group or committee used by the covered entity.[14] Moreover, for any particular meeting to be covered, the subject matter discussed must consist, at least in part, of "foreseeable action." This term refers to matters on which it is foreseeable that action will be taken by a board subject to the Sunshine Law.[15]
A private organization that performs services for a public agency and receives compensation for these services is not, by virtue of that relationship alone, subject to section 286.011, Florida Statutes. Rather, the courts have generally considered whether there has been a delegation of the public agency's governmental or legislative functions or whether the private organization plays an integral part in the public agency's decision-making process.[16]
Much of the litigation involving application of the open government laws to private organizations has been in the area of public records, however, and the courts have frequently referred to Chapter 119, Florida Statutes, in determining the applicability of the Sunshine Law.[17]
Recent decisions by Florida courts to determine whether the open government laws apply to a private entity focus on whether the private entity is merely providing services to the public agency or whether it is standing in the shoes of the public agency. For example, the court in Stanfield v. Salvation Army,[18] in holding a private corporation subject to Chapter 119, Florida Statutes, noted that a private corporation taking over the county's role as the provider of probation services "was not the provision of architectural services as in Schwab, but the complete assumption of a governmental obligation. Rather than providing services to
the county, the Salvation Army provided services in place of the county."
The Fifth District Court of Appeal in News-Journal Corporation v.Memorial Hospital-West Volusia, Inc.,[19] reviewed the relationship between a hospital authority and the not-for-profit company leasing the public hospital's facilities. The court recognized a distinction between a contract in which the private entity provides services to a public body and a contract in which the private entity provides services in place of the public entity:
"If one merely undertakes to provide material — such as police cars, fire trucks, or computers — or agrees to provide services — such as legal services, accounting services, or other professional services--for the public body to use in performing its obligations, then there is little likelihood that such contractor's business operation or business records will come under the open meetings or public records requirements. On the other hand, if one contracts to relieve a public body from the operation of a public obligation — such as operating a jail or providing fire protection — and uses the same facilities or equipment acquired by public funds previously used by the public body then the privatization of such venture to the extent that it can avoid public scrutiny would appear to be extremely difficult, regardless of the legal skills lawyers applied to the task."[20]
The district court reversed the lower court's holding that the not-for-profit company was outside the scope of the Public Records Law and the Government in the Sunshine Law. The Florida Supreme Court has granted review of this case.[21]
In the instant inquiry, the Hollywood Economic Growth Corporation is a private nongovernmental organization created to encourage business in that community. The corporation is not a state or local governmental agency and its organization and operation are not regulated by state statute or local ordinance. Further, HEGC does not act in an advisory capacity to a governmental unit that is subject to the Sunshine Law. Rather, HEGC appears to act primarily in the interests of private business concerns and the business community in advising them of the availability of opportunities of which they may take advantage, and in counseling them regarding their suitability to participate in these programs.
An examination of the interaction of the Hollywood Economic Growth Corporation with the City of Hollywood and the HUD 108 program convinces me that HEGC has not been delegated any authority to act on the city's behalf. The HEGC is not performing functions integral to the city's decision-making process in the HUD 108 program nor is the corporation advising the city on the acceptance of any participants to the program.
In sum, it is my opinion that the Hollywood Economic Growth Corporation is not subject to the requirements of the Government in the Sunshine Law when it counsels and advises private business concerns on their participation in the HUD 108 loan program made available through the City of Hollywood.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] Following the issuance of Attorney General's Opinion 98-24, you advised this office that incomplete information had been provided by your attorney relating to your opinion request. While you acknowledge that the conclusion in that opinion is correct based upon the information submitted, it does not accurately reflect your situation.
Like any attorney providing legal advice to clients, this office relies on a complete and accurate disclosure of information upon which Attorney General Opinions are based. This office does not generally reconsider opinion requests. However, this case is unique in that your attorney was not communicating with you nor was he providing this office with information essential to the resolution of this issue. The following discussion more accurately reflects the factual circumstances that currently concern the Hollywood Economic Growth Corporation.
[2] Section 1.6.1, By-Laws of the Hollywood Economic Growth Corporation, (hereafter "by-laws").
[3] Section 1.6.2, by-laws.
[4] Section 1.6.3, by-laws.
[5] Section 1.6.4, by-laws.
[6] Sections 1.6.5. and 1.6.6, by-laws.
[7] Section 1.6.8, by-laws.
[8] Section 2.1, by-laws.
[9] The public directors are: the City Manager of the City of Hollywood; one elected official of the City of Hollywood, appointed by the city commission; and the director of a local vocational-technical center or other educator knowledgeable in workforce training issues appointed by the city commission. The president of the Broward Economic Development Council is an ex officio director of the board and the chamber director is an appointee of the Greater Hollywood Chamber of Commerce.
[10] Section 3.3, by-laws.
[11] City of Miami Beach v. Berns, 245 So.2d 38 (Fla. 1971);Times Publishing Company v. Williams, 222 So.2d 470 (Fla. 2d DCA 1969).
[12] Times Publishing Company, supra.
[13] Id.
[14] See generally, Hough v. Stembridge, 278 So.2d 288 (Fla. 3d DCA 1973); Town of Palm Beach v. Gradison, 296 So.2d 473, 477
(Fla. 1974); Ops. Att'y. Gen. Fla. 95-60 (1995), 85-55 (1985), and 74-294 (1974).
[15] See, Board of Public Instruction of Broward County v.Doran, 224 So.2d 693 (Fla. 1969); Canney v. Board of PublicInstruction of Alachua County, 278 So.2d 260 (Fla. 1973); Ops. Att'y. Gen. Fla. 93-79 (1993) and 81-88 (1981).
[16] And see, IDS Properties, Inc. v. Town of Palm Beach,279 So.2d 353 (Fla. 4th DCA 1973), wherein the court held that there was no government by delegation exception to the Government in the Sunshine Law by undertaking to delegate the conduct of public business through the use of an alter ego.
[17] See generally, Marston v. Gainesville Sun PublishingCompany, Inc., 341 So.2d 783 (Fla. 1st DCA 1976), cert. denied,352 So.2d 171 (Fla. 1977); Cape Coral Medical Center, Inc. v.News-Press Publishing Company, Inc., 390 So.2d 1216, 1218 n. 5 (Fla. 2d DCA 1980) (inasmuch as the policies behind Ch. 119 and s.286.011 are similar, they should be read together); Wood v.Marston, 442 So.2d 934, 938 (Fla. 1983); and Krause v. Reno,366 So.2d 1244 (Fla. 3d DCA 1979).)
[18] 695 So.2d 501, 503 (Fla. 5th DCA 1997).
[19] Id. at 420.
[20] 695 So.2d 418 (Fla. 5th DCA 1997).
[21] News-Journal Corporation, id., rev. granted, 700 So.2d 686
(Fla. 1997).