485 So.2d 409 (1986)
Eugene JOHNSON, Petitioner,
v.
Richard Yale FEDER, Circuit Judge, Eleventh Judicial Circuit, Dade County, Florida, Respondent.
No. 66554.
Supreme Court of Florida.
March 20, 1986.
*410 Bennett H. Brummer, Public Defender and Marti Rothenberg, Asst. Public Defender, Eleventh Judicial Circuit, Miami, for petitioner.
Jim Smith, Atty. Gen., and Randi Klayman Lazarus, Asst. Atty. Gen., Miami, for respondent.
BARKETT, Justice.
This cause is before the Court on petition for review because the decision below, Johnson v. Feder, 463 So.2d 431 (Fla. 3d DCA 1985), conflicts with McShay v. State, 447 So.2d 444 (Fla. 2d DCA 1984). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We quash the decision below and adopt the holding of the Second District in McShay.
Petitioner, Eugene Johnson, was found not guilty by reason of insanity on two separate murder charges in 1981. He was committed to the Department of Health and Rehabilitative Services for involuntary hospitalization pursuant to section 916.15, Florida Statutes (1981), and Florida Rule of Criminal Procedure 3.217.
In April of 1984, the hospital medical personnel responsible for reviewing petitioner's condition submitted a report to the trial court stating that petitioner continued to meet the statutory criteria for involuntary hospitalization. Petitioner contested that conclusion and moved for the appointment of independent psychiatric experts and a court hearing pursuant to Florida Rule of Criminal Procedure 3.218. The requested relief was denied by the trial court, and petitioner then applied for a writ of mandamus to the Third District Court of Appeal.
On appeal, petitioner claimed that his indefinite commitment to the state hospital without an opportunity to be heard in court violated his federal constitutional right[1] to due process and his rights under the above-cited statute and rule. The Third District denied his request for relief, holding that the right to a judicial hearing is triggered *411 only when the hospital medical staff recommends release. Since the medical staff recommended continued involuntary hospitalization, the court concluded that petitioner was not entitled to a hearing. We cannot agree.
We are compelled by well-established norms of statutory construction to choose that interpretation of statutes and rules which renders their provisions meaningful. Statutory interpretations that render statutory provisions superfluous "are, and should be, disfavored." Patagonia Corporation v. Board of Governors of the Federal Reserve System, 517 F.2d 803, 813 (9th Cir.1975). See also Smith v. Piezo Technology and Professional Administrators, 427 So.2d 182, 184 (Fla. 1983) (courts must assume that statutory provisions are intended to have some useful purpose). Courts are not to presume that a given statute employs "useless language." Times Publishing Company v. Williams, 222 So.2d 470, 476 (Fla. 2d DCA 1969).
After applying these rules of statutory construction and carefully considering the applicable statute and rule, we conclude that both section 916.15(2), Florida Statutes (1981), and Florida Rule of Criminal Procedure 3.218 require a judicial hearing, if requested, whether the hospital administrator recommends release or continued hospitalization.
The hospital administrator's report which precipitated petitioner's motion for a judicial hearing and examination by independent experts was prepared pursuant to section 916.15(2) which provides that reports are to be filed by the hospital administrator on three separate occasions:
1. No later than six months after the date of admission;
2. Prior to the end of any period of extended hospitalization;
3. At any time the administrator determines the patient no longer meets the criteria for continued hospitalization.
The legislature distinguished between "the end of any period of extended hospitalization" and such "time [as] the administrator determines the patient no longer [requires] hospitalization", and required a report in both instances. By drawing this distinction, it is clear that the legislature intended to require a report regardless of whether or not the hospital administrator determined that the patient continued to meet the criteria for further commitment. To conclude otherwise would render this distinction meaningless.
The provision requiring reports is followed by subsection (3) of section 916.15 which discusses the requisite judicial hearings. Subsection (3) provides that both the patient and the state have the right to a hearing before the committing court in "all proceedings" under section 916.15.[2] The only "proceedings" contemplated by the section are the initial determination by the court concerning the need for involuntary hospitalization and the filing of the required reports by the hospital administrator. Therefore, hearings are mandated after each report, if requested.
The same procedures are discussed in Florida Rule of Criminal Procedure 3.218. The rule initially sets forth two occasions on which reports must be filed:
1. No later than six months from the date of admission;
2. At any time the administrator determines the patient no longer meets the criteria for continued hospitalization.
Section 3.218(a) then provides that the "court shall hold a hearing within 30 days of the receipt of any such report." At this point in the text, the rule addresses the third time period and provides that the "same procedure [i.e., report followed by judicial hearing] shall be repeated prior to the expiration of each additional one year period."
*412 Thus, it can be seen that both the statute and the rule require a filed report and a judicial hearing following the hospital administrator's annual determination of an insanity acquittee's continued need for involuntary hospitalization, regardless of the substance of that determination.[3]
To interpret the statute as respondent urges would make meaningless much of the content of both statute and rule. For example, the filing of those annual reports which recommend continued hospitalization would be meaningless. Why send them to the court if the court is powerless to act upon them?
Furthermore, rule 3.218(b) provides that both the state and the insanity acquittee can demand that the patient be examined by independent experts "relative to the criteria for continued involuntary hospitalization" prior to any judicial hearings held pursuant to the rule. Why would an acquittee desire an independent examination when the hospital experts were already recommending his release? To invoke one's right to such an examination would be to incur a decided risk (i.e., the independent experts might disagree with the staff) with no possible countervailing benefit.
On the other hand, all the provisions of the rule and statute have an easily understood and perfectly sound meaning under the view that an insanity acquittee has the right to a judicial hearing after each annual report regardless of its conclusion. Should the hospital staff recommend release, then the state can insist on an independent examination of the patient. If, on the other hand, the medical staff recommends continued hospitalization, then the acquittee can invoke his or her right to be examined by the independent experts.
Moreover, the interpretation in McShay, which we adopt, also strikes a reasonable balance between the competing interests involved. On the one side stands the state's interest in protecting society from dangerous individuals; on the other, we have the acquittee's right not to be wrongfully incarcerated when he is no longer dangerous. Societal safety is protected by a sequence of procedures that ensures that an insanity acquittee will not be discharged absent (1) review by hospital medical personnel familiar with the acquittee's case; (2) examination by independent experts, if requested by the state; (3) a court hearing; and (4) a determination by a trial judge that the acquittee no longer meets the criteria for continued hospitalization. On the other side of the scale, the acquittee's interests are safeguarded by his or her legal right to request examination by independent experts and a judicial hearing before hospitalization is extended for a further year.
In that our decision herein grants petitioner's requested relief on the relevant statutory grounds, we do not address petitioner's constitutional arguments. We recognize that "[i]t is a fundamental maxim of judicial restraint that `courts should not decide constitutional issues unnecessarily.'" In re Forfeiture of One Cessna 337H Aircraft, 475 So.2d 1269, 1270-71 (Fla. 4th DCA) (quoting Jean v. Nelson, ___ U.S. ___, 105 S.Ct. 2992, 2998, 86 L.Ed.2d 664 (1985)), review dismissed, 480 So.2d 1293 (Fla. 1985); see also Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944).
The ruling below is quashed with directions to the Third District to grant the relief requested in petitioner's writ of mandamus.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
NOTES
[1] Petitioner has not argued any violation of his state constitutional rights.
[2] In addition, the provision (a) affords both the patient and the state the right to depose witnesses and obtain discovery of the patient's records before the hearing, (b) affords both parties the right to present evidence at the hearing, and (c) gives the patient the right to counsel.
[3] Rule 3.218(b) further affords the court, the state, and the patient the right to the appointment of independent experts to examine the patient "prior to any hearing held pursuant to this Rule."