CASANUEVA, Judge.
Yusef Furqan petitions this court for a writ of certiorari, claiming that the circuit court departed from the essential requirements of the law in denying him the appointment of independent evaluators to opine whether he continued to meet the criteria for involuntary commitment. The State has conceded that the circuit court erred in denying Mr. Furqan’s request, and we grant the petition.[1]
*637 I. Background
In 2008, stemming from a charge of battery upon an emergency medical care provider, Yusef Furqan stipulated to an adjudication of not guilty by reason of insanity and was committed to the Department of Children and Family Services for inpatient treatment. The circuit court retained jurisdiction over him pursuant to sections 916.15 and 916.16, Florida Statutes (2008).[2] The last statutorily-mandated hearing of record, to determine if continued commitment was indicated, was held in June 2011. The circuit court at that time found that Mr. Furqan continued to meet the criteria for further involuntary commitment, and that finding was upheld in Furqan v. State, 91 So.3d 913, 915 (Fla. 2d DCA 2012).[3] On July 19, 2012, a status *638 check on Mr. Furqan’s continued commitment was scheduled but continued several times at the request of his new counsel. At a subsequent status check in early September 2012, the court was informed that Mr. Furqan had been transferred to a different facility and that his new doctor at that facility was of the opinion that he was not fit for release but had not yet written a report to that effect. Mr. Furqan’s counsel requested and was granted another continuance so she could confer with the new doctor, obtain a written report, and confer with her client. Based on further unavoidable delays, the final status check was held on October 26, 2012.
At this October 26 status check,[4] Mr. Furqan’s counsel related that the new doctor had diagnosed Mr. Furqan as suffering from intermittent explosive disorder, poly-substance dependence, and antisocial personality disorder. Counsel further pointed out that the new doctor’s diagnoses contained an additional finding, i.e., the diagnosis of an intermittent explosive disorder, a diagnosis that the earlier examining physicians had not made in 2011. Counsel further noted that the earlier examining physicians had recommended discharge to the community via probation or some form of controlled release. Her client was also claiming that he was not currently prescribed any psychotropic medications, and although his new doctor had noted certain recent “incidents” at the facility, Mr. Furqan was denying most of them. Based on what counsel concluded were disputed issues relative to Mr. Furqan’s continued need for involuntary commitment, counsel requested appointment of independent evaluators and, based on their report, potentially a full evidentiary hearing on continued involuntary commitment. The circuit court denied her request, saying:
Up until [the new doctor’s] report there was some dispute about whether he should be committed involuntarily. And there were doctors suggesting that he should not be and recommending that he not be. And because that issue was in dispute we held a hearing. And I disagreed with the opinion of the doctors from [the facility where he was at that time]. I made numerous findings on all of that. We had a lengthy hearing on all of that and I found that he did meet criteria to continue to be remaining [sic] involuntarily hospitalized and that he should not be released and that there was no plan for his release. And that was all taken up on appeal. There’s a lengthy opinion that’s been issued by the appellate court talking about that hearing and affirming the court’s decision on that. And the only thing now that’s changed since that time is he’s been relocated from [his prior facility] to this facility that he’s now in, in South Florida where he’s now been evaluated by their doctor who says that he should remain involuntarily committed, that he does suffer from a mental illness, that he is [a] danger to the community, and all the things that I found at the time of the hearing.... And so, I don’t know what we would have a hearing for. There’s no issue in dispute.... And the evidence is significantly heavier now in *639 terms of keeping him committed than it was when we actually had the hearing and I didn’t release him. So there’s no reason to set a hearing....
So, until someone at his [current] facility says he no longer meets criteria he would remain involuntarily placed and it’s good to have a written report now, that’s thorough and updated and current •with his current placement so we fully understand his situation, where he is and how he’s doing. And it just solidifies that he continues to meet criteria.
It is from this denial that Mr. Furqan timely petitioned this court.
II. Standard of Review
We review the circuit court’s order to determine if it is a departure from the essential requirements of the law, resulting in material injury for the remainder of the case that cannot be corrected on appeal. This is a narrow review requiring us to find “ ‘something far beyond legal error. It means an inherent illegality or irregularity, an abuse of judicial power, an act ... disregarding] procedural requirements, resulting in a gross miscarriage of justice.’ ” Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 527-28 (Fla.1995) (quoting Jones v. State, 477 So.2d 566, 569 (Fla.1985) (Boyd, C.J., concurring specially))- We find such gross miscarriage of justice in this case: Mr. Furqan has been denied his statutory right to independent experts and potentially a hearing on whether he continues to be, since June 2011, a danger to society, i.e., he has suffered a denial of due process affecting a basic liberty interest.
III. Discussion
Although the State has properly conceded that Mr. Furqan has met the requirements for obtaining a writ of certiora-ri in this proceeding, and so that in the future the same error will be avoided in protecting the important liberty interest of persons acquitted by reason of insanity but involuntarily committed, we draw the circuit court’s attention to Johnson v. Feder, 485 So.2d 409 (Fla.1986) (adopting the holding of McShay v. State, 447 So.2d 444 (Fla. 2d DCA 1984)). Johnson has important parallels with Mr. Furqan’s case and controls the disposition of Mr. Furqan’s petition.[5]
In Johnson, the supreme court construed section 916.15, Florida Statutes (1981), and the relevant applicable rules, Florida Rules of Criminal Procedure 3.217 and 3.218.[6] The court determined that the statute required that a hearing be held after each report by the hospital administrator of the facility where the defendant was committed, if the defendant requested such hearing and that this requirement remained regardless of whether the administrator recommended release or continued commitment. 485 So.2d at 411. The supreme court found that the statutory language was clear and unambiguous and required the report (a) no later than six months after the date of admission, (b) prior to the end of any period of extended *640 hospitalization — -which rule 3.218 interpreted to mean not more than one year — and (c) at any time the administrator determined that the defendant no longer met the criteria for continued involuntary commitment. Id. The committing court’s lack of discretion in these matters could not be clearer:
Thus, it can be seen that both the statute and the rule require a filed report and a judicial hearing following the hospital administrator’s annual determination of an insanity acquittee’s continued need for involuntary hospitalization, regardless of the substance of that determination.[3]
485 So.2d at 412. The statute leaves it to the patient and his or her counsel’s discretion whether to request a hearing and appointment of independent experts prior to any such hearing.
IV. Conclusion
Defense counsel exercised Mr. Furqan’s rights pursuant to the statute and criminal rules to a hearing and appointment of independent experts to examine him after receipt of the (2012) annual report of the administrator of the facility where he was housed. The circuit court departed from the essential requirements of the law in denying him these rights.
Petition for writ of certiorari granted, order quashed, and cause remanded with directions to appoint at least two but not more than three independent experts to examine Mr. Furqan to determine whether he continues to meet the criteria for involuntary commitment. If Mr. Furqan subsequently requests a further evidentiary hearing, it must be accorded him.
DAVIS, C.J., and CRENSHAW, J., Concur.

. Although the district courts have not been consistent in treating this type of appeal as a *637 petition for writ of certiorari or a direct appeal, see, e.g., Furqan v. State, 91 So.3d 913, 914 n. 1 (Fla. 2d DCA 2012), we conclude that reviewing it as a petition for certiorari is the better course in this instance. See also note 5, infra.

. Sections 916.15 and 916.16, Florida Statutes (2008), provide the procedure under which a defendant in Mr. Furqan's circumstances shall be committed initially and what shall occur subsequently:
916.15 Involuntary commitment of defendant adjudicated not guilty by reason of insanity.—
(1) The determination of whether a defendant is not guilty by reason of insanity shall be determined in accordance with Rule 3.217, Florida Rules of Criminal Procedure.
(2) A defendant who is acquitted of criminal charges because of a finding of not guilty by reason of insanity may be involuntarily committed pursuant to such finding if the defendant has a mental illness and, because of the illness, is manifestly dangerous to himself or herself or others.
(3) Every defendant acquitted of criminal charges by reason of insanity and found to meet the criteria for involuntary commitment may be committed and treated in accordance with the provisions of this section and the applicable Florida Rules of Criminal Procedure. The department shall admit a defendant so adjudicated to an appropriate facility or program for treatment and shall retain and treat such defendant. No later than 6 months after the date of admission, prior to the end of any period of extended commitment, or at any time the administrator or designee shall have determined that the defendant no longer meets the criteria for continued commitment placement, the administrator or designee shall file a report with the court pursuant to the applicable Florida Rules of Criminal Procedure.
(4)In all proceedings under this section, both the defendant and the state shall have the right to.a hearing before the committing court. Evidence at such hearing may be presented by the hospital administrator or the administrator’s designee as well as by the state and the defendant. The defendant shall have the right to counsel at any such hearing. In the event that a defendant is determined to be indigent pursuant to s. 27.52, the public defender shall represent the defendant. The parties shall have access to the defendant’s records at the treating facilities and may interview or depose personnel who have had contact with the defendant at the treating facilities.
916.16 Jurisdiction of committing court.—
(1) The committing court shall retain jurisdiction over any defendant involuntarily committed due to a determination of incompetency to proceed due to mental illness or a finding of not guilty by reason of insanity pursuant to this chapter. The defendant may not be released except by order of the committing court. An administrative hearing examiner does not have jurisdiction to determine issues of continuing commitment or release of any defendant involuntarily committed pursuant to this chapter.
(2) The committing court shall retain jurisdiction in the case of any defendant placed on conditional release pursuant to s. 916.17. Such defendant may not be released from the conditions of release except by order of the committing court.

. This opinion was filed on July 6, 2012. It reviewed the circuit court’s June 2011 order on continued involuntary commitment. Mr. Furqan’s first status check in 2012 was held *638 on July 19, 2012. It may be that the circuit court considered that the July 6, 2012, opinion of this court obviated the need for Mr. Furqan's annual review in 2012. See 91 So.3d at 914 n. 1 (noting that certiorari proceedings generally provide quicker resolution of disputes, but that had not been the case for Mr. Furqan in that proceeding).

. The circuit court was vigilant and avoided denominating each "status check” a "hearing.” So although the circuit court met numerous times with counsel, Mr. Furqan was never present, and any information presented was done informally.

. In Johnson, Mr. Johnson, who was involuntarily committed, had been denied a hearing when the reviewing psychiatric personnel at the facility where he was a patient had reported that he continued to meet the criteria for continued involuntary commitment. He then petitioned the Third District for a writ of mandamus, which the district court denied. 485 So.2d at 410. Given the nondiscretion-ary language of the statute and the rule that the supreme court in Johnson discussed and we discuss below, it appears that a petition for writ of mandamus would also be a proper method to invoke our jurisdiction in circumstances like Mr. Furqan's.

. The supreme court in Johnson, 485 So.2d at 410, was reviewing the 1981 version of section 916.15, but it and its applicable rules presently remain substantively the same.

. Rule 3.218(b) further affords the court, the state, and the patient the right to the appointment of independent experts to examine the patient "prior to any hearing held pursuant to this Rule.”