# SIXTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

Case No. 6D2023-3607
Lower Tribunal No. 2023-CF-003059-O

_____

STATE OF FLORIDA,

Appellant,

v.

NYYA JAHNAI HERARD,

Appellee.

_____

Appeal from the Circuit Court for Orange County.
Kevin B. Weiss, Judge.

August 15, 2025

GANNAM, J.

The State of Florida appeals the dismissal of an information charging Nyya Jahnai Herard with carrying a concealed firearm without a license under section 790.01, Florida Statutes (2022). The trial court retroactively applied the 2023 amendment to the concealed carry statute redefining the crime to require the State to prove not only the carrying of a concealed firearm without a license, but also ineligibility for a license. Because it was error to apply the 2023 amendment retroactively, we reverse.

# I. The case and facts

Following a traffic stop on March 8, 2023, Orlando Police Department officers arrested Herard for carrying a concealed firearm without a license. The State charged Herard by information with violation of section 790.01(2), Florida Statutes (2022) ("[A] person who is not licensed . . . and who carries a concealed firearm on or about his or her person commits a felony of the third degree . . . .").

An amendment to section 790.01 took effect on July 1, 2023, under which it is not a crime for a person to carry a concealed firearm without a license if the person "otherwise satisfies the criteria for receiving and maintaining such a license." § 790.01(1)(b), Fla. Stat. (2023). Herard moved to dismiss the information, attesting that she met the criteria of the amended statute.[1] Herard argued the concealed carry amendment was excepted from the general prohibition against retroactive application of amendments to criminal statutes in section 775.022(3), Florida Statutes (2023), because, under subsection (4) of the statute, amendments reducing the punishment for violating a criminal statute must be applied retroactively.

The State opposed dismissal under subsection (4) of section 775.022, arguing that the concealed carry amendment changed the elements of a section 790.01 violation, not the punishment for a violation. The State also argued that subsection

---

[1] Herard did not challenge the stop, search, or arrest, and the State does not dispute her eligibility for a concealed carry license.

(5) of section 775.022, permitting retroactive application of certain defenses to criminal statutes, did not apply for the same reason—the concealed carry amendment redefined the elements of the crime, not a defense to the crime.

The trial court granted dismissal, concluding that the concealed carry amendment applied retroactively under subsection (4) of section 775.022 because the amendment "reduced the punishment from a third-degree felony punishable by up to five years in prison to no punishment at all for those individuals who are eligible to receive and maintain a license to conceal carry pursuant to the enumerated criteria." The State timely appealed.

## II. Questions presented and standard of review

The State seeks reversal on the ground that the trial court erred in retroactively applying the concealed carry amendment under subsection (4) of section 775.022. The State also argues that subsection (5) of section 775.022 provides no alternative ground for "tipsy coachman" affirmance. *See, e.g.*, *Wright v. State*, 393 So. 3d 229, 230 & n.2 (Fla. 6th DCA 2023). Both arguments present questions of law we review de novo. *See State v. Tacher*, 84 So. 3d 1131, 1132 (Fla. 3d DCA 2012).

Answering these questions requires our interpretation of section 775.022, Florida's statutory "savings clause" governing retroactive application of amendments to criminal statutes, and application of the savings clause to the 2023 amendments to section 790.01, Florida's criminal concealed carry statute. Without

any authoritative decision on these issues from the Florida Supreme Court or our own district, we undertake our interpretive work according to first principles. *See CED Cap. Holdings 2000 EB, LLC v. CTCW-Berkshire Club, LLC*, 363 So. 3d 192, 195 (Fla. 6th DCA 2023).

Florida courts "follow the supremacy-of-text principle—namely, the principle that the words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946 (Fla. 2020) (cleaned up) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)). Thus, we interpret Florida's constitution and statutes according to the plain meaning of their text, looking to "all the textual and structural clues that bear on the meaning of a disputed text" and using the traditional interpretive canons for guidance where helpful. *Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022) (cleaned up).

### III. Analysis

#### A. The statutory savings clause

Preceding the 2019 enactment of Florida's statutory savings clause, section 775.022, voters in the 2018 General Election amended Florida's constitutional savings clause, article X, section 9. As amended, the constitutional savings clause provides, "Repeal of a criminal statute shall not affect prosecution for any crime committed before such repeal." Art. X, § 9, Fla. Const. Prior to the

4

amendment, the constitutional savings clause "prohibited the Legislature not just from making the repeal of a statute retroactive, but also from making an amendment to a criminal statute applicable to pending prosecutions or sentences." *Jimenez v. Jones*, 261 So. 3d 502, 503–04 (Fla. 2018). After the amendment, there was no longer "any provision in the Florida Constitution that would prohibit the Legislature from applying an amended criminal statute retroactively to pending prosecutions or sentences," but "nothing in our constitution does or will require the Legislature to do so." *Id.* at 504.

Following the constitutional amendment, in 2019, the Legislature comprehensively addressed retroactive application of amendments to criminal statutes by enacting the statutory savings clause, section 775.022. The statutory savings clause generally prohibits retroactive application of amendments to criminal statutes unless expressly provided by the Legislature or one of two statutory exceptions applies:

> (3) Except as expressly provided in an act of the Legislature or as provided in subsections (4) and (5), the reenactment or amendment of a criminal statute operates prospectively and does not affect or abate any of the following:
>
> (a) The prior operation of the statute or a prosecution or enforcement thereunder.
>
> (b) A violation of the statute based on any act or omission occurring before the effective date of the act.

5

(c) A prior penalty, prior forfeiture, or prior punishment incurred or imposed under the statute.

(4) If a penalty, forfeiture, or punishment for a violation of a criminal statute is reduced by a reenactment or an amendment of a criminal statute, the penalty, forfeiture, or punishment, if not already imposed, must be imposed according to the statute as amended.

(5) This section may not be construed to limit the retroactive effect of any defense to a criminal statute enacted or amended by the Legislature in a criminal case that has not yet resulted in the imposition of a judgment or sentence by the trial court or an appellate decision affirming a judgment or sentence of the trial court.

§ 775.022(3)–(5), Fla. Stat.[2]

---

[2] In addition to amendments, section 775.022 also addresses "reenactment" of criminal statutes. Reenactment may include (we do not decide) reenactment to cure a constitutional single-subject violation, *see, e.g.*, Ch. 2002-212, Laws of Fla. ("WHEREAS, the Legislature . . . has prepared five separate bills to reenact selected provisions of chapter 99–188, Laws of Florida, all of which relate to the single general issue of sentencing in criminal cases . . . ."), reenactment of a repealed or expiring statute, *see, e.g.*, § 1004.343, Fla. Stat. (2024) ("This section is repealed July 1, 2026, unless reviewed and reenacted by the Legislature before that date."), or the periodic, bulk reenactment of all Florida statutes for codification and publication in the official Florida Statutes under the Legislature's permanent statutory revision plan, *see* §§ 11.241, 11.242, Fla. Stat. (2024); *Salters v. State*, 758 So. 2d 667, 670 (Fla. 2000) ("[T]he Legislature amends sections 11.2421, 11.2422, 11.2424, and 11.2425, Florida Statutes, to prospectively adopt as the official statutory law of Florida those portions of the statutes that are carried forward from the preceding regular edition of the Florida Statutes."). Until 1999, this bulk reenactment occurred every odd year in "the biennial adoption process." *Salters*, 758 So. 2d at 670; *see also, e.g.*, Ch. 1999-10, Laws of Fla. Since 2003, however, the reenactment has occurred every year with the passage of an annual adoption act. *See* Preface, Fla. Stat. (2024); Chs. 2024-1, 2023-12, 2022-3, 2021-50, 2020-1, 2019-2, 2018-109, 2017-2, 2016-8, 2015-1, 2014-16, 2013-13, 2012-4, 2011-2, 2010-3, 2009-19, 2008-3, 2007-7, 2006-3, 2005-1, 2004-4, 2003-25, Laws of Fla.

**B. The 2023 amendment to the concealed carry criminal statute**

At the time of Herard's arrest, the criminal concealed carry statute defined the offense as follows: "a person who is not licensed under s. 790.06 and who carries a concealed firearm on or about his or her person commits a felony of the third degree." § 790.01(2), Fla. Stat. (2022). The 2023 amendment changed the definition of the crime. As amended, the statute provides, "A person is authorized to carry a . . . concealed firearm . . . if he or she: (a) Is licensed . . . or (b) Is not licensed . . . but otherwise satisfies the criteria for receiving and maintaining such a license . . . ." § 790.01(1), Fla. Stat. (2023). Thus, the new definition of the crime is: "a person who does not meet the criteria [of licensure and eligibility for licensure] in subsection (1) and who carries a concealed firearm . . . on or about his or her person commits a felony of the third degree . . . ." § 790.01(3), Fla. Stat. (2023). As a result of the amendment, the State now has the burden to prove not only negative licensure, but also negative eligibility for licensure: "In any prosecution for a violation . . . of subsection (3), the state bears the burden of proving, as an element of the offense, both that a person is not licensed . . . and that he or she is ineligible to receive and maintain such a license . . . ." § 790.01(4), Fla. Stat. (2023).

### C. Application of the statutory savings clause
### to the 2023 concealed carry amendment

### 1. Application of savings clause subsection (4)

The trial court held the 2023 concealed carry amendment applicable to Herard's prosecution, retroactively, under subsection (4) of section 775.022. Subsection (4) requires retroactive application of an amendment to a criminal statute reducing the punishment for a violation of the statute if punishment has not yet been imposed. § 775.022(4), Fla. Stat. The concealed carry statute, § 790.01, Fla. Stat., is a "criminal statute" under the savings clause, defined broadly as "a statute, whether substantive or procedural, dealing in any way with a crime or its punishment, defining a crime or a defense to a crime, or providing for the punishment of a crime." § 775.022(2). Thus, subsection (4) of the savings clause applies if the amendment to section 790.01 reduced the punishment for a violation of section 790.01.

Both before and after the amendment to section 790.01, however, the crime of carrying a concealed firearm was "a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084." § 790.01(2), Fla. Stat. (2022); § 790.01(3), Fla. Stat. (2023) (same). The amendment redefined a violation of the statute by adding an element, but it did not reduce the punishment for a violation. Thus, subsection (4) of section 775.022 does not except the 2023 concealed carry amendment from the retroactivity prohibition of section 775.022(3). The trial court erred in dismissing the information under subsection (4).

The case relied on by the trial court in applying subsection (4), *Dean v. State*, 303 So. 3d 257 (Fla. 5th DCA 2020), is inapposite. In *Dean*, a defendant charged with a $400 theft under section 812.014(1), (2)(c)1., Florida Statutes (effective July 1, 2019), sought a writ of prohibition to require retroactive application of an amendment to the theft statute reclassifying the $400 theft from a third-degree felony to a first-degree misdemeanor. *Dean*, 303 So. 3d at 258; § 812.014(1), (2)(e), Fla. Stat. (effective Oct. 1, 2019). The *Dean* court recognized that section 775.022(4) required retroactive application of an amendment to a criminal statute reducing the punishment for a violation of the statute, and therefore granted the requested relief. *Dean*, 303 So. 3d at 258–59.

The defendant in *Dean* was not similarly situated to Herard. The definition of the crime of theft under section 812.014 was the same under both versions of the statute at issue in *Dean*:

> (1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
>
> (a) Deprive the other person of a right to the property or a benefit from the property.
>
> (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

§ 812.014, Fla. Stat. (effective July 1, 2019); § 812.014, Fla. Stat. (effective Oct. 1, 2019) (same). The amendment to the theft statute changed the dollar amount thresholds for the different degrees of punishment for theft. Prior to the amendment, a theft of $400 was classified as a third-degree felony, § 812.014(2)(c)1., Fla. Stat. (effective July 1, 2019), punishable by up to five years in prison, § 775.082(3)(e), Fla. Stat. (2019). After the amendment, the same $400 theft was classified as a first-degree misdemeanor, § 812.014(2)(e), Fla. Stat. (effective Oct. 1, 2019), punishable by up to one year in jail, § 775.082(4)(a), Fla. Stat. (2019). By contrast, the amendment Herard wants retroactively applied did not change the punishment for the crime of concealed carry of a firearm—the crime is classified a third-degree felony both before and after the amendment. *Compare* § 790.01(2), Fla. Stat. (2022), *with* § 790.01(3), Fla. Stat. (2023). Instead, the concealed carry amendment changed the definition of the crime by adding an element. Thus, the *Dean* court's retroactive application of the 2019 theft amendment has no bearing on the retroactive application of the 2023 concealed carry amendment sought by Herard.

## 2. Application of savings clause subsection (5)

Herard argues on appeal that subsection (5) of section 775.022 provides an alternative ground for affirmance. The State counters that subsection (5) is not available to Herard, even on tipsy coachman grounds, because Herard never argued subsection (5) to the trial court in seeking dismissal. But the State argued below

against the application of subsection (5), in both its written opposition to dismissal and at the dismissal hearing. So, subsection (5)'s applicability was before the trial court, even if the trial court did not address subsection (5) in its order granting Herard's motion to dismiss. Thus, we will consider whether subsection (5) provides an alternative ground for affirmance. *See State v. Hankerson*, 65 So. 3d 502, 505 (Fla. 2011), *as revised on denial of reh'g* (June 30, 2011) ("A trial court's ruling should be upheld if there is any legal basis in the record which supports the judgment. It follows that to aid the appellate court in its task, the appellee should be permitted to explicate any legal basis supporting the trial court's judgment.").

Subsection (5) of section 775.022 provides that the statute "may not be construed to limit the retroactive effect of any *defense* to a criminal statute enacted or amended by the Legislature in a criminal case that has not yet resulted in the imposition of a judgment or sentence by the trial court." (Emphasis added.) What does the statute mean by "defense?" The prepositional phrase "to a criminal statute" can only modify "defense"—i.e., "defense to a criminal statute." But the phrase "enacted or amended by the Legislature" could modify either "defense"—i.e., "any defense . . . enacted or amended by the Legislature," or it could modify "criminal statute"—i.e., "a criminal statute enacted or amended by the Legislature." Giving effect to the whole text, however, only the former makes sense.

11

Section 775.022 is a statute restricting the retroactivity of amendments to criminal statutes. Subsection (5) of section 775.022 provides an exception for certain defenses. In context, only new, statutory defenses can be the subject of a provision excepting defenses from the general retroactivity prohibition of section 775.022(3). "Any defense" that is newly "enacted or amended by the Legislature" is a natural subject of retroactivity analysis as to existing prosecutions. But a defense that already existed when a crime was committed or charged would not have to be applied retroactively to that crime. Nor could an existing defense be applied retroactively to a "criminal statute" newly "enacted or amended by the Legislature"—only prospective application of such a defense would be possible. Also, at any given time, all effective criminal statutes have been "enacted or amended by the legislature," or both. Thus, in the context of subsection (5), "enacted or amended by the Legislature" would be a superfluous modifier of "criminal statute," but the phrase is an effective modifier of "any defense."

"It is an elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage." *Hechtman v. Nations Title Ins. of New York*, 840 So. 2d 993, 996 (Fla. 2003); *see also Johnson v. Feder*, 485 So. 2d 409, 411 (Fla. 1986) ("Statutory interpretations that render statutory provisions superfluous are, and should be, disfavored." (internal

quotation marks omitted)); *Reading Law* at 174–79 ("Surplusage Canon"). In context, and giving effect to the whole text of section 775.022, subsection (5) only permits the retroactive application of a newly enacted or amended statutory defense to a criminal statute.[3]

As shown above, the 2023 amendment to section 790.01 redefined the crime of carrying a concealed firearm by adding the element of negative eligibility for licensure. The amendment did not add any new statutory defense to the crime. Thus, subsection (5) of section 775.022 does not except the 2023 concealed carry amendment from the retroactivity prohibition of section 775.022(3) and does not provide an alternate ground for affirmance of the trial court's dismissal.[4]

---

[3] There is a general sense in which a "defense" to a crime could be an affirmative defense or simply the negation of an element of the crime by disproving or casting doubt on it. *See generally State v. Green*, 400 So. 2d 1322, 1323 n.1 (Fla. 5th DCA 1981) ("A valid defense can either establish an affirmative defense or negate a prima facie element."); *State v. Cohen*, 568 So. 2d 49, 51–52 (Fla. 1990) ("An 'affirmative defense' is any defense that assumes the complaint or charges to be correct but raises other facts that, if true, would establish a valid excuse or justification or a right to engage in the conduct in question. An affirmative defense does not concern itself with the elements of the offense at all; it concedes them. In effect, an affirmative defense says, 'Yes, I did it, but I had a good reason.'"). The text of subsection (5)—i.e., "any defense . . . enacted or amended by the Legislature"—includes statutory affirmative defenses, but we do not hold in this case that subsection (5) excludes statutory defenses, if any, that do not meet the common definition of an affirmative defense.

[4] We take no issue with the dissent's seriatim definitions of "any," "defense," and "criminal statute." (*See infra* dissenting op. Section II.B.) To be sure, we quote in full and apply the definition of "criminal statute" (*see supra* Part III.C.1), and we explain the different senses of "defense" (*see supra* note 3). The dissent labors in

13

Section 790.01's statutory history[5] illustrates the point. The 2013 version of section 790.01 defined the offense of carrying a concealed firearm as follows: "A person who carries a concealed firearm on or about his or her person commits a felony of the third degree . . . ." § 790.01(2) (2013). In a separate subsection, the 2013 version provided an exception: "This section does not apply to a person licensed to carry . . . a concealed firearm . . . ." § 790.01(3) (2013). Under this version of the statute, the Florida Supreme Court held "that licensure is an affirmative defense to a charged crime of carrying a concealed weapon . . . and the lack of a license is *not* an element of the crime." *Mackey v. State*, 124 So. 3d 176, 181 (Fla. 2013) (footnote omitted). The court based its conclusion "upon a clear reading of

vain, however, because the sum of these definitions does not support the dissent's conclusion that the Legislature *enacted* a "defense" to the concealed carry statute by amending the elements of the concealed carry crime. (*See infra* dissenting op. Sections II.C, III.A.) The theory of defense that the state did not prove every element of a charged crime is as old as the state's burden to prove every element beyond a reasonable doubt. *See Cohen*, 568 So. 2d at 51 (tying state's burden to "the fundamental tenets of Anglo-American law, long embodied in the Florida Constitution"). Thus, this elementary "defense" preexists any amendment to a criminal statute to change the elements of the crime. Such an amendment does not *enact*—i.e., "make into law"—the defense that the state did not prove those elements. *Enact*, *American Heritage Dictionary of the English Language* (5th ed. 2022); *Enact*, *Black's Law Dictionary* (12th ed. 2024) ("To make into law by authoritative act.").

[5] "As distinguished from 'legislative history,' i.e. the hearings, committee reports, and debates leading up to the enactment of a statute, 'statutory history' refers to the statutes repealed or amended by the statute under consideration." *Progressive Express Ins. Co. v. SimonMed Imaging*, 363 So. 3d 1196, 1201 n.3 (Fla. 6th DCA 2023).

14

section 790.01 and consideration of its structure, the chapter of the Florida Statutes that governs firearms and other weapons, and the legal precedent on this issue." *Id.*; *see also Hodge v. State*, 866 So. 2d 1270, 1272 (Fla. 4th DCA 2004) ("If the exception appears in the enacting clause, the burden lies with the State to prove that the defendant is not within the exception; but, if the exception is contained in a subsequent clause or statute, that is a matter of defense requiring the defendant to put forth some evidence in support thereof.")

The 2015 amendment to section 790.01 combined the concealed carry and licensure language into the same subsection defining the offense: "a person who is not licensed . . . and who carries a concealed firearm on or about his or her person commits a felony of the third degree . . . ." § 790.01(2), Fla. Stat. (2015). The 2015 amendment also added new exception language in a separate subsection: "This section does not apply to: [a] person who carries a concealed weapon . . . on or about his or her person while in the act of evacuating during a mandatory evacuation order issued during a state of emergency . . . ." § 790.01(3)(a), Fla. Stat. (2015). Under the supreme court's interpretation of the 2013 version in *Mackey*, the new structure and placement of the exception in the 2015 version indicates that both the concealed carrying of a firearm and negative licensure were elements of the crime to be proved by the State, while the mandatory evacuation exception was an affirmative defense.

The 2023 amendment to section 790.01 redefined the crime of carrying a concealed weapon again to include the new element that the person carrying a concealed firearm without a license also "does not meet the criteria" for a license, § 790.01(3), Fla. Stat. (2023), and expressly provided that "[i]n any prosecution . . . the state bears the burden of proving, as an element of the offense, both that a person is not licensed . . . and that he or she is ineligible to receive and maintain such a license . . . ." § 790.01(4), Fla. Stat. (2023). The 2023 amendment also altered but retained the mandatory evacuation defense first enacted in the 2015 version. § 790.01(5)(a), Fla. Stat. (2023).

With the 2015 amendment to the concealed carry statute, the Legislature converted the licensure defense into the element of negative licensure, and added a new mandatory evacuation defense. For a defendant awaiting trial when the 2015 amendment took effect, subsection (5) of section 775.022 would not have applied to the added element of the offense, but subsection (5) would have permitted retroactive application of the new mandatory evacuation defense "enacted . . . by the Legislature." With the 2023 amendment, the Legislature added the negative eligibility element and amended the mandatory evacuation defense. For a defendant awaiting trial when the 2023 version took effect—like Herard—subsection (5) does not apply to the added element of the offense, but subsection (5) does permit

retroactive application of the mandatory evacuation defense to the extent it was "amended by the Legislature."

## IV. Conclusion

The 2018 amendment to the Florida constitutional savings clause allows the Legislature to decide when an amendment to a criminal statute is retroactive.[6] In the absence of express legislative provision, the statutory savings clause prohibits retroactive application of an amendment redefining the elements of a crime, § 775.022(3), requires retroactive application of an amendment reducing the punishment for a crime, § 775.022(4), and does not prohibit the retroactive application of an amendment enacting or amending a statutory defense to a crime, § 775.022(5).

The 2023 amendment to the concealed carry statute did not provide any new statutory defense to the crime of carrying a concealed firearm. Nor did it reduce the punishment for the crime. Rather, the amendment redefined the crime itself by adding a new element that the State must prove beyond a reasonable doubt to secure a conviction. Thus, neither subsection (4) nor subsection (5) of section 775.022 applies to the amendment, and section 775.022(3) otherwise prohibits retroactive

---

[6] This legislative power is subject to the constitutional ex post facto clauses that "prohibit the State of Florida from retroactively changing the definition of a crime to make formerly innocent behavior illegal or increasing the punishment for criminal acts." *State v. Lobato*, 394 So. 3d 1219, 1222 (Fla. 6th DCA 2024) (citing Art. I, § 10, Fla. Const.; Art. I, § 9, cl. 3, § 10, cl. 1, U.S. Const.).

17

application of the amendment. Under section 775.022(3)(a), the 2023 concealed carry amendment "operates prospectively and does not affect or abate . . . [t]he prior operation of the statute or a prosecution or enforcement thereunder." Accordingly, we reverse the trial court's dismissal of the information charging Herard with a violation of the 2022 version of section 790.01 and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

LAMBERT, B.D., Associate Judge, concurs.
WHITE, J., concurs in part, dissents in part, with opinion.

_____

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED
_____

WHITE, J., concurring in part, dissenting in part.

I concur with the majority's conclusion that the trial court erred when it found that section 775.022(4), Florida Statutes, required that the 2023 amendments to section 790.01, Florida Statutes, be applied in this case. However, because I conclude that the 2023 amendments to section 790.01, Florida Statutes, must be applied here pursuant to section 775.022(5), Florida Statutes, I dissent from the majority's decision to reverse and remand.

18

## I.

"In interpreting [a] statute, we follow the 'supremacy-of-text principle'—namely, the principle that '[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.'" *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946 (Fla. 2020) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)). The ultimate goal is to reach "a 'fair reading' of the text by 'determining the application of [the] text to given facts on the basis of how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued.'" *Id.* at 947 (quoting Scalia & Garner, *supra*, at 33). We err if we decide what a disputed term or phrase means in isolation without considering context or utilizing interpretive canons. *See Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022). "Under the whole-text canon, proper interpretation requires consideration of 'the entire text, in view of its structure and of the physical and logical relation of its many parts.'" *Lab'y Corp. of Am. v. Davis*, 339 So. 3d 318, 324 (Fla. 2022) (quoting Scalia & Garner, *supra*, at 167). A statutory definition of a term is almost always conclusive. *See Gov't Emps. Ins. Co. v. Glassco Inc.*, 394 So. 3d 1115, 1119 (Fla. 2024) (first citing *Greenleaf & Crosby Co. v. Coleman*, 158 So. 421, 427 (Fla. 1934); and then citing Scalia & Garner, *supra*, at 228). Absent a definition in the statute or controlling case law, an appropriate dictionary may be consulted to help ascertain

the statutory term's meaning. *See Conage*, 346 So. 3d at 599. With all those principles guiding me, I turn to the task at hand.

## II.A.

The Legislature has declared that section 775.022 "may not be construed to limit the retroactive effect of *any defense to a criminal statute* enacted or amended by the Legislature in a criminal case that has not yet resulted in the imposition of a judgment or sentence by the trial court." § 775.022(5), Fla. Stat. (2023) (emphasis added). Therefore, it is essential to properly determine the meaning of "any," "defense," and "criminal statute" to reach a fair reading of section 775.022(5).

## II.B.

The term "any" is not defined in section 775.022. The Florida Supreme Court, however, stated that "[t]he word 'any' is defined as 'one, no matter what one: every' or 'all.'" *McNeil v. State*, 215 So. 3d 55, 59 (Fla. 2017) (quoting *Webster's Third New International Dictionary* 97 (1993)). *McNeil's* definition of "any" is properly used in this case because a substantially different definition is not contained in a Florida Supreme Court case or dictionary that existed when the Legislature enacted section 775.022.

Although neither the Legislature nor the Florida Supreme Court defined "defense," a tried-and-true legal dictionary defined it as "[a] defendant's stated reason why the plaintiff or prosecutor has no valid case." *Defense*, *Black's Law*

20

*Dictionary* (11th ed. 2019); *accord State v. Kinney*, 762 A.2d 833, 846 (Vt. 2000) ("A defense is 'any set of identifiable conditions or circumstances that may prevent conviction for an offense.'" (quoting 1 P. Robinson, *Criminal Law Defenses* § 21, at 70 (1984)).

Thus, "any defense" includes every kind of reason why the prosecutor has no case against the defendant. That broad scope necessarily includes every type of defense that disputes the prosecutor's proof of guilt or proves that the defendant is not guilty, as to the elements of the crime or otherwise. *See, e.g.*, *Failure-of-Proof Defense*, *Black's Law Dictionary* (11th ed. 2019) ("The defense that a party's proof does not establish a fact essential to a claim"); *General Defense*, *Black's Law Dictionary* (11th ed. 2019) ("A denial in broad terms of at least one element in a complaint or charge."); *Legal Defense*, *Black's Law Dictionary* (11th ed. 2019) ("A complete and adequate defense in a court of law."); *see also State v. Green*, 400 So. 2d 1322, 1323 & n.1 (Fla. 5th DCA 1981) (a defendant may use a rule 3.190(c)(4) motion to "establish a valid defense" and "[a] valid defense can either establish an affirmative defense or negate a prima facie element.").

Unlike the terms "any" and "defense," the term "criminal statute" has a statutory definition: "a statute, whether substantive or procedural, dealing in any way with a crime or its punishment, defining a crime or a defense to a crime, or providing for the punishment of a crime." § 775.022(2), Fla. Stat. (2023). That is sweeping

language.  It specifically includes "a statute . . . defining a crime."  *Id.*  "The elements of a crime are derived from the statutory definition."  *See Reynolds v. State*, 784 So. 2d 509, 511 (Fla. 1st DCA 2001) (quoting *State v. Gray*, 435 So. 2d 816, 820 (Fla. 1983)), *approved*, 842 So. 2d 46 (Fla. 2002).

## II.C.

In view of all the foregoing, "any defense to a criminal statute" includes every basis for a challenge to a criminal charge, including a challenge relating to one or more of the statutory elements or asserting a right to engage in the allegedly illegal activity.  It follows that "any defense to a criminal statute" is "enacted or amended by the Legislature" when, inter alia, a statutory change is made that inserts a new element within the definition of the crime or expressly authorizes the prohibited conduct.  If such statutory change is effective before a judgment or sentence is imposed or affirmed, then the defendant may deploy it in his or her case.  *See* § 775.022(5), Fla. Stat. (2023).

## III.A.

That is exactly what happened here.  The Legislature changed the definition of the crime by adding an element, i.e., the person fails to meet the specified statutory criteria for receiving and maintaining a license to carry a concealed firearm.  *Compare* § 790.01(3), (4), Fla. Stat. (2023), *with* § 790.01(2), Fla. Stat. (2022).  The Legislature also created an *express authorization* to carry a concealed firearm that

was not in the prior version of the statute. *Compare* § 790.01(1), Fla. Stat. (2023) ("A person is authorized to carry a . . . concealed firearm . . . if he or she: (a) Is licensed . . . or (b) Is not licensed . . . but otherwise satisfies the criteria for receiving and maintaining such a license . . . ."), *with* § 790.01, Fla. Stat. (2022). Through her pretrial sworn rule 3.190(c)(4) motion, Herard proved that she was expressly authorized to carry a concealed firearm because she satisfied the statutory requirements for a license and established that the State could not prove that she was ineligible to receive and maintain a license. Section 775.022(5) entitled Herard to rely on the 2023 amendment to section 790.01, so the trial court correctly granted her motion to dismiss.

### III.B.

The majority disagrees. They make no effort, however, to ascertain the meaning of the key terms in section 775.022(5). Their opinion is devoid of reference to a definition of "any" or "defense" in a Florida Supreme Court case or dictionary. Glaringly absent from Part III.C.2. of their opinion is the statutory definition of "criminal statute." Unconstrained by the actual meaning of the key terms, the majority considers them in isolation or out of context and ignores or limits their scope.[7] Therefore, their interpretation of "any defense to a criminal statute enacted

---

[7] The majority states that they "take no issue" with my definitions of the key terms, Maj. Op., note 4, but they do not apply them in their interpretation of section

or amended by the Legislature" is fatally flawed because they departed from fundamental principles. *See supra* Section I.

## IV.

Even if the majority's interpretation is reasonable, my interpretation "is []  favored by another canon of statutory construction, the rule of lenity." *State v. Weeks*, 202 So. 3d 1, 8 (Fla. 2016).

> "[W]hen criminal statutes are subject to competing, albeit reasonable, interpretations, they must be 'strictly construed . . . most favorably to the accused.'" *Polite v. State*, 973 So. 2d 1107, 1111 (Fla. 2007) (quoting § 775.021(1), Fla. Stat. (2002)). This extremely important statutory canon is codified in section 775.021(1), Florida Statutes (2012), which provides that, "[t]he provisions of this code and offenses defined by other statutes shall be strictly construed; when the language

---

775.022(5). Instead, they disregard or narrow those terms and consider their so-limited "defense" with "enacted" in isolation and out of context. For example, "criminal statute" includes "a statute defining a crime," and "any defense to a statute defining a crime" is any basis for a challenge to the statutory elements of a crime. An "affirmative defense," however, "does not concern itself with the elements of the offense at all; it concedes them." *State v. Cohen*, 568 So. 2d 49, 51–52 (Fla. 1990). Therefore, "any defense to a statute defining a crime" excludes an "affirmative defense." The only effective way for the Legislature to enact or amend "any defense to a statute defining a crime" is to add or revise an element within the statutory definition. *See supra* Section II.B., Section II.C. By rejecting that, the majority renders "any defense to a statute defining a crime enacted or amended by the Legislature" useless and runs afoul of the canon against surplusage they invoke. *See* Maj. Op., Part III.C.2. (first citing *Hechtman*, 840 So. 2d at 996; then citing *Johnson*, 485 So. 2d at 411; and then citing Scalia & Garner, *supra*, at 174–79). Furthermore, the majority fails to explain why section 775.022(5) does not permit the retroactive application of the brand-new express authorization in section 790.01(1), which is independent of the definition of the crime and its elements in section 790.01(3), (4). *See supra* Section II.C., Section III.A.

is susceptible of differing constructions, it shall be construed most favorably to the accused." § 775.021(1), Fla. Stat. (2012).[8]

*Weeks*, 202 So. 3d at 8. Although the rule of lenity is a "canon of last resort," it is a "fundamental tenet of Florida law" and "not just an interpretative tool, but a statutory directive." *Id.* (first quoting *Polite*, 973 So. 2d at 1112; and then quoting *Kasischke v. State*, 991 So. 2d 803, 814 (Fla. 2008)).

Here, section 775.022(5)'s undefined terms (e.g., "any" and "defense"), defined term (i.e., "criminal statute"), and disputed phrase ("any defense to a criminal statute enacted or amended by the Legislature") must be interpreted "most favorably" to Herard. § 775.021(1), Fla. Stat. (2023); *see Weeks*, 202 So. 3d at 4–5, 8–9 (construing the "felon-in-possession" statute, including a defined term ("antique firearm") and an undefined term ("replica") in favor of the defendant pursuant to the rule of lenity); *see also id.* at 10–11 (Canady, J., concurring) (finding that the rule of lenity precluded the narrow interpretation of "antique firearm" and "replica" advocated by the State). Therefore, my interpretation of section 775.022(5) carries the day, and the trial court properly dismissed the information against Herard.

For all the foregoing reasons, I would affirm the trial court's order granting the motion to dismiss.

---

[8] Section 775.021(1) has remained unchanged.

25

James Uthmeier, Attorney General, Tallahassee, and Richard A. Pallas, Jr., Assistant Attorney General, Daytona Beach, for Appellant.

Melissa Vickers, Public Defender, and Joshua Sinclair, Assistant Public Defender, Orlando, for Appellee.